UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case Number 21-MJ-188 |
| RYAN Samsel, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

On January 6, 2021, despite the fact that he had an open warrant for assault and that he was on parole for a second, unrelated incident involving intimidation of a witness, Ryan Samsel chose to travel to Washington D.C. and to assault a U.S. Capitol Police Officer, interfering with her ability to protect the U.S. Capitol and the members of Congress and Vice President who were inside it. Unlike many others involved in the insurrection, Samsel started on his way to approach the barricades before President Trump's speech had even ended. He, along with a crowd of people to include Joe Biggs and Ethan Nordean (to name a few), approached the Capitol at the barricades at Peace Circle. And, there, at a circle named for peace, Samsel was the first out of the crowd to approach the barricades and engage with officers. Someone trailed closely behind him, and then, the rest of the crowd followed. Samsel later bragged about how he led the crowd, proud of the fact that he was featured in news articles across the nation.

Samsel's assault on O-1 is just the latest in a string of prior assaultive offenses, dating back all the way to 2006. The facts underlying these other convictions are extremely disturbing. They show a pattern of Samsel choking and beating women to the point of loss of consciousness, of many hospital visits for many victims, of chipped and missing teeth, and of Samsel even breaking

1

into one victim's home multiple times to assault her.

The Government does not dispute defense counsel's representations about Samsel's injuries or discount those injuries. They are a concern and should be considered by this Court. However, the Government does not believe that they outweigh the remaining 18 U.S.C. § 3142(g)(1)–(4) factors and the need to protect the public. And, as defense counsel has pointed out, regardless of this Court's ruling in this case, Samsel will remain detained because of his parole hold.

## Procedural History

On January 29, 2021, the District Court for the District of Columbia issued an arrest warrant charging defendant Ryan Samsel with one felony count of Assaulting, Resisting, or Impeding Certain Officers and Inflicting Bodily Injury in violation of 18 U.S.C. § 111(a)(1) and (b), one count of Obstructing Law Enforcement during Civil Disorder in violation of 18 U.S.C. § 231, and one count of Obstruction of Official Proceeding in violation of 18 U.S.C. § 1512(c)(2). (R. 1). These charges stemmed from his actions on January 6, 2021, during the timeframe a joint session of the United States Congress had convened to certify the vote count of the Electoral College of the 2020 Presidential Election.

On January 30, defendant was arrested in the Eastern District of Pennsylvania. Two days later, on February 2, Pennsylvania State Parole lodged a detainer against Samsel. On February 5, U.S. Magistrate Judge Richard A. Lloret ordered the defendant detained pursuant to his consent. (R. 3; 2:2-MJ-00197 EDPA). Samsel was transported to D.C. and appeared in D.C. District Court on February 19. At that hearing, he again consented to detention, reserving the right to bring up the issue at a later date, and was ordered detained.

On May 24, 2021, the defendant filed the instant motion to revoke the magistrate judge's

order of detention.

## Applicable Authority

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Pursuant to 18 U.S.C. § 3142(f)(1)(A), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence. 18 U.S.C. § 3156(a)(4)(C).

In determining whether detention or pretrial release is appropriate, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). A finding that a defendant poses a risk of flight must be supported by a preponderance of the evidence. *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). A finding that a defendant poses a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(e).

## Factual Background

The FBI obtained multiple videos of what occurred on January 6 that depict Samsel assaulting an officer (hereinafter O-1) and engaging in disruptive or disorderly conduct. The video footage shows that at approximately 12:45 p.m. on January 6, 2021, as preparations for the proceedings described above were underway in the House and the Senate, a large crowd gathered to the West of the U.S. Capitol around the Peace Monument, located in the Pennsylvania Avenue, NW, and 1st Street, NW, roundabout, that was commonly referred to as "Peace Circle" by U.S.

Capitol Police Officers. The crowd then moved southeast to the threshold of the sidewalk that connects Peace Circle to the U.S. Capitol Building, commonly referred to as the "Pennsylvania Ave Walkway" by U.S. Capitol Police Officers. Metal barricades had been put in place by U.S. Capitol Police Officers. The metal barricades were intended to keep the public away from the Capitol building and the Congressional proceedings underway inside.



*Figure 1. Aerial Imagery of U.S. Capitol Grounds.*

At approximately 12:50 p.m., Samsel was observed walking past the fence line with one other individual. (see Figure 2 below). The two approached a second line of barricades that were manned by uniformed U.S. Capitol Police Officers. The second line of barricades were constructed of metal bike rack barriers, physically linked end to end, and reinforced with dark colored plastic mesh safety fencing affixed behind the metal bike racks. The fence line was clearly marked with

4

large white "AREA CLOSED" signs affixed to the fencing with bold red lettering. (see Figure 3 below).



*Figure 2. Samsel (boxed in red) Leading Crowd to Barricades Blocking Access to Pennsylvania Walkway.*



*Figure 3*

Upon approaching the barricade manned by U.S. Capitol Police Officers, Samsel immediately became confrontational with O-1 with an aggressive posture (see Figure 4 below).



*Figure 4. Samsel Confronting Uniformed U.S. Capitol Police Officers.*

Samsel and others in the crowd pushed and pulled on the barricades. Samsel eventually removed his light blue jacket, revealing a long sleeve white-hooded shirt under a black T-shirt and turned his hat around backwards in a manner that appears as if Samsel was preparing for a physical altercation. (See Figures 5-10 below).



*Figure 5. Samsel Pushing & Pulling on Barricades*     *Figure 6. Samsel Removing Jacket*

   

*Figure 7*            *Figure 8. Turning Hat*    *Figure 9-10. Pushing & Pulling Barricades*

After removing his jacket, Samsel pushed and pulled the barricades until the crowd successfully pushed the barricades down on top of the officers. In the process of pushing the barricades to the ground, Samsel and others knocked over O-1 as the crowd lifted the barricades up and pushed toward the Capitol, causing O-1's head to hit the stairs behind her. Samsel picked O-1 up off the ground.  *See* Figures 11 and 12 below.  U.S. Capitol Police Officers immediately took a semi-conscious O-1 away from Samsel and told her to go toward the West Terrace of the U.S. Capitol Building to regroup with additional officers for her safety.  Hours later while arresting a rioter, O-1 blacked out and collapsed in the booking area and had to be transported to the Emergency Room at a local hospital, where she was assessed to have suffered a concussion.

 

*Figure 11. Officer O-1 on Stairs after Being Knocked Down*     *Figure 12. Samsel and Officer O-1*

After U.S. Capitol Police Officers were able to reform the police line after the initial surge by Samsel and others that resulted in the barricades being breached and O-1 being injured, the crowd again confronted U.S. Capitol Police Officers on the West Terrace of the U.S. Capitol building. Moments later, Samsel advanced further into the U.S. Capitol Grounds, which remained closed to the public. While among others in the crowd at the West Terrace, Samsel attempted to pull a riot shield from a uniformed U.S. Capitol Police Officer (see Figures 13, 14, 15 below).

  

*Figure 13. **Samsel** Advancing*     *Figure 14. **Samsel** Confronting Police*     *Figure 15. **Samsel** pulling on Riot Shield*

8

Samsel was arrested on January 30, 2021. At the time of his arrest, his residence was searched pursuant to a search warrant, and the FBI located the red hat he was wearing the day of the riots. On the day of his arrest, Samsel admitted that he was the individual seen on video pushing the barricades and engaging with the officers at the Peace Circle but denied causing O-1 to fall, instead pointing out that he helped her get up. The forensic examination of Samsel's phone revealed that he discussed his plans to go to Washington D.C. several days before the trip, that he took numerous videos and photographs utilizing his phone while in the vicinity of the U.S. Capitol (some of which depicted him in the restricted area), and that he sent others newspaper articles about the media coverage of him approaching the barriers at Peace Circle, bragging about his role in the incident.

## Argument

The government respectfully submits that there are no conditions or combinations of conditions that can effectively ensure the safety of any other person should Samsel be released.

## Nature and Circumstances of the Offenses

The nature and circumstances of the offense weigh in favor of Samsel's continued detention. Chief Judge Howell has set forth a number of considerations to differentiate the severity of the conduct of the hundreds of defendants connected to the events of January 6. *See United States v. Chrestman*, 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021). These considerations include whether a defendant: (1) "has been charged with felony or misdemeanor offenses"; (2) "engaged in prior planning before arriving at the Capitol"; (3) carried or used a dangerous weapon during the riot; (4) "coordinat[ed] with other participants before, during, or after the riot"; or (5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct"; and (6) the nature of "the defendant's words and movements during the riot,"

9

including whether he "damaged or attempted to damage federal property," "threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot." Id. at *7–8. Here, these factors weigh in favor of detention. Samsel is charged with multiple felony offenses, he threatened, confronted, and injured law enforcement, and he was the first person to approach the barricades at Peace Circle. Samsel's actions led others to follow in his footsteps and led to disruption, chaos, and violence.

In *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021), the D.C. Circuit made clear that "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *Id*. at 1284. "In so holding, *Munchel* drew categorical distinctions between the violent and non-violent January 6 participants explaining that the former are categorically more dangerous." *United States v. Fairlamb*, 2021 WL 1614821, at *5 (D.D.C. Apr. 26, 2021).

Samsel's violent conduct on January 6 thus puts him in the most dangerous category of offenders carved out by *Munchel* and *Chrestman*. The intent and result of his conduct was to disrupt the peaceful and orderly transition of presidential power using violence. The nature and circumstances of Samsel's offenses show a clear disregard for the law, an aversion to the fundamental tenets of democracy, and a willingness to act violently, all of which indicate that he poses a danger to the community.

### Weight of the Evidence

The second factor also clearly weighs in favor of detention. The evidence against the Samsel is overwhelming. Samsel identified himself in countless videos that show him leading the charge on the barricades at Peace Circle, confronting the officers (including O-1) at the barricades, and continuing on into the restricted area. Not only that, but Samsel is depicted attempting to take the shield from a second officer later on that same day. And, Samsel's cellular phone had dozens of text messages and photographs and videos showing him in the restricted area, at Peace Circle, and in the vicinity of the U.S. Capitol.

### Defendant's History and Characteristics

Under the third factor, the Court must consider defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," 18 U.S.C. § 3142(g)(3)(A); and "whether, at the time of the current offense or arrest, [defendant] was on probation, on parole, or on other release, *Id.* § 3142(g)(3)(B).

The Government does not dispute that Samsel has medical conditions that are alarming. Nor does the Government in any way suggest that the Court should not take into account those conditions. They are a mitigating factor here, but they simply do not outweigh other aspects of Samsel's history and characteristics, which leave little doubt that Samsel's release would put the public at-risk. Samsel has an extensive criminal history of assaultive and violent behavior. His criminal history dates all the way back to 2006. That conviction for terroristic threats, reckless endangerment, and disorderly conduct involved Samsel trying to run someone off the road because they owed him 60 dollars. The female victim was forced to pull over, after which Samsel

approached her vehicle and punched her windshield, telling her he knew where she lived and would kill her if he didn't get his money. *See* Govt. Ex. 1, 2006 Rept. Then, in 2007, a police report was filed against Samsel after Samsel allegedly got into another man's car and starting hitting him in the face. Someone called an ambulance for the man, who was badly beaten, and the police observed his front teeth were missing and that his face was bloody. *See* Govt. Ex. 2, 2007 Rept. In 2009, Samsel was convicted of simple assault and reckless endangerment after he held a victim against her will for five hours, choking her to the point of unconsciousness, pushing her, beating her, and chipping her teeth. *See* Govt. Ex. 3, 2009 Rept. Then, in 2011, Samsel was convicted of simple assault, reckless endangerment, disorderly conduct, and unlawful restraint, as well as for intimidation of a witness, for choking and beating his pregnant girlfriend. *See* Govt. Ex. 4, 2011 Rept.

The allegations of that assault involved Samsel smashing a hot pizza in the victim's face, beating the victim, pouring a beer over her head, and eventually throwing her into the canal, where he then hopped down and held her head under. When Samsel finally stopped holding her, the victim ran into the street barefoot and found a police vehicle. She desperately tried to open the door of the vehicle and the officer saw her and unlocked it so she could get in. Samsel later attempted to and did interfere with her testimony about what had occurred.

> A: That Ryan had started a fight at the VFW and he blamed her for the fight. Ryan first started a verbal argument then she said he would not let her leave. They visited people and went house to house. The argument escalated from verbal to physical. He started smacking her and smashed a pizza in her face. Then while walking to his house he poured beer over her. He pushed her down then threw her into the canal. Before throwing her in, he said to her, "You have a choice right now, you can live or die or you can fight back or let me do it. She told me he jumped in with her and he pulled her under. She said she could not breathe and she was trying to rationalize with him, telling Ryan she loved him so he would let her go. She said that if she screamed or yelled for help it would have been worse, (meaning) she said she was in fear for her life. She also told her sister, "I was afraid he was going to kill me." ▆▆▆ did change her story and lessened Ryan's actions because she was terrified of him.

In 2015, Samsel was yet again convicted of simple assault. This involved a different victim recounting numerous assaults by Samsel, including her alleging that at one point, he had choked

her to the point of unconsciousness and that, at another point, he hit her so hard she had a hematoma. *See* Govt. Ex. 5, 2015 Rept.

In 2019, a still different victim came forward, recounting several incidents of Samsel choking her to the point of unconsciousness and breaking into her house and assaulting her. She described waking up vomiting, with him still in the house. The victim also alleged that Samsel raped her multiple times, and that she had often been scared he would kill her. She had obtained a restraining order, but Samsel violated the restraining order multiple times. *See* Govt. Ex. 6, 2019 Rept. There is an outstanding warrant for Samsel's arrest based on this conduct in New Jersey. Samsel was not only wanted on that that warrant at the time of the offense conduct in this case, but he was also still on parole for the 2011 conviction described above.

### Nature and Seriousness of the Danger

Samsel's release would pose a danger to the community. First, his conduct in this case—assaulting police officers in an effort to undermine a presidential election—shows a disregard for the safety of others, the rule of law, and the democratic process. Indeed, "if any crime establishes danger to the community and a disregard for the rule of law, assaulting a riot-gear-clad police officer does." *United States v. Fairlamb*, 2021 WL 1614821, at *5 (D.D.C. Apr. 26, 2021).

"It cannot be gainsaid that the violent breach of the [U.S.] Capitol on January 6 was a grave danger to our democracy, and that those who participated could rightly be subject to detention to safeguard the community." *Munchel*, 991 F.3d at 1284–85. In *Munchel*, the D.C. Circuit remarked that "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *Id.* at 1284. Samsel's actions on January 6 place in him squarely

into *Munchel*'s more dangerous category and provide clear and convincing evidence that he "poses a concrete, prospective threat to public safety." *Id*. at 1280.

Second, Samsel has an extensive history of violent and assaultive behavior and of intimidation of witnesses. Reviewing the police reports from these prior incidents reveals a pattern of Samsel not only threatening to kill others, but coming extremely close to actually doing so. The courts have repeatedly failed the public and these victims when it comes to Samsel. No condition or combination of conditions that could ensure the safety of the community if he were to be released. This Court should deny Samsel's motion.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 415793

By:   /s/ *April N. Russo*
      April N. Russo
      Assistant United States Attorney
      PA Bar No. 313475
      United States Attorney's Office
      555 Fourth Street, N.W.
      Washington, DC 20530
      Phone: (202) 252-1717
      E-mail: april.russo@usdoj.gov

Date: June 2, 2021

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading was served on all counsel of record via the Court's electronic filing service.

/s/ April N. Russo
April N. Russo
Assistant United States Attorney

Date: June 2, 2021