```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

 * * * * * * * * * * * * * * *
UNITED STATES OF AMERICA,        ) Criminal Action
                                 ) No. 21-188
vs.                              )
                                 )
RYAN SAMSEL,                     ) June 21, 2021
                                 ) 4:05 p.m.
              Defendant.         ) Washington, D.C.
                                 )
 * * * * * * * * * * * * * * *
```

**TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE ZIA M. FARUQUI,
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE**

**APPEARANCES**:

```
FOR THE UNITED STATES:   DANIELLE ROSBOROUGH
                         U.S. Attorney's Office
                         555 4th Street, NW
                         Washington, DC 20001
                         (202) 252-6837
                         Email: danielle.rosborough@usdoj.gov

FOR THE DEFENDANT:       JOHN M. PIERCE
                         Pierce Bainbridge P.C.
                         355 South Grand Ave., 44th Floor
                         Los Angeles, CA 90071
                         (213) 400-7125
                         Email: jpierce@piercebainbridge.com

ALSO PRESENT:            ANDRE SIDBURY, Pretrial Officer


Court Reporter:          Elizabeth Saint-Loth, RPR, FCRR
                         Official Court Reporter
```

*This hearing was held via videoconference and
telephonically and is therefore subject to the limitations
associated with the use of technological difficulties, static
interference, etc.*

Proceedings reported by machine shorthand, transcript
produced by computer-aided transcription.

|   |   |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | THE COURTROOM DEPUTY:  Your Honor, this is |
| 3 | magistrate case 21-188, the United States of America versus |
| 4 | Ryan Samsel.  The defendant is not present. |
| 5 | This matter is set for assessment of counsel. |
| 6 | Parties, please introduce yourselves for the record, |
| 7 | starting with the government. |
| 8 | MS. ROSBOROUGH:  Good afternoon, Your Honor. |
| 9 | Danielle Rosborough on behalf of the United States. |
| 10 | MR. PIERCE:  Good afternoon, Your Honor. |
| 11 | John Pierce on behalf of Ryan Samsel. |
| 12 | THE COURT:  Thanks so much.  I gather |
| 13 | Ms. Pasqualini is not on the line; is that right?  It |
| 14 | doesn't look like it. |
| 15 | MR. PIERCE:  That is correct, Your Honor.  She is |
| 16 | not. |
| 17 | THE COURT:  Okay.  So it looks like we're -- |
| 18 | thanks for your correspondence over the weekend, Mr. Pierce. |
| 19 | Right?  Is that right? |
| 20 | MR. PIERCE:  Yes, sir. |
| 21 | THE COURT:  And, Mr. Pierce, I just want to |
| 22 | confirm.  I don't know.  Are you admitted or are you going |
| 23 | pro hac?  I can't remember.  I know the clerk's office had |
| 24 | reached out to make sure everything -- |
| 25 | MR. PIERCE:  Yes, Your Honor.  I am now in the |

1    federal court there in D.C.  So I believe I've entered a
2    notice of appearance.  I think I'm good.
3           THE COURT:  I think that's right.  I just wanted
4    to make sure.  Thanks so much.
5           As you can imagine, we have a lot of these so --
6    I'm sorry for the delay with --
7           MR. PIERCE:  Yes.
8           THE COURT:  -- the previous matter that went to
9    contempt, and so now we're just trying to get everything
10   sorted out.  That's not a threat.  It was an actual
11   recitation of what occurred before.
12          So were you able to talk to the marshal service?
13   It sounds like your client is still at Rappahannock.  He was
14   supposed to have a hearing tomorrow with a state court judge
15   to effectuate the transfer.
16          I understand that now -- because we have vacated
17   our order to do a temporary release -- that he will stay at
18   Rappahannock and that we can have a call.  I have to say I
19   am a little surprised because he was at the previous
20   proceeding where we discussed this.  I inquired upon him,
21   and he indicated that this is what he wanted to do, as I
22   understood it, and that he was comfortable with being sent
23   back.
24          Now, he is more than welcome to change his mind,
25   and that's totally fair; and there is nothing wrong with

1   that.  I just want to get, sort of, once -- not forever --
2   but at least once, for now, everyone on the same sheet of
3   music as to what is he hoping to do because the marshal
4   service went out of their way to try to accommodate -- as
5   did Ms. Russo and the government.
6           So I am sure -- I know Ms. Rosborough from my time
7   previously at DOJ.  She is also incredibly fair and
8   thoughtful, so I am sure she'll want to -- I mean, we just
9   want to make sure that your client is getting the care that
10  he needs.  So as I understand it -- we won't get into the
11  substance too much, Mr. Pierce, but we would like -- he
12  would like -- and you think it's right that he stay at
13  Rappahannock; is that right?
14          MR. PIERCE:  Well, Your Honor, he certainly -- and
15  I appreciate the fact that, you know, perhaps there has been
16  some back and forth in this and, obviously, I wasn't -- I
17  don't know exactly what happened; I understand that.
18          So he definitely would like to stay in the federal
19  system.  What he actually is requesting -- I am not sure if
20  we can have him on at some point here, you know, to speak
21  directly to Your Honor if that's your wish.  But --
22          THE COURT:  No.  I think we'll set another hearing
23  later this week where we'll have everybody on for exactly
24  that purpose.  But I just want to start by hearing, kind of,
25  what's the state of play, and then we'll go from there; that

1    will help me for later this week.
2             MR. PIERCE:  Yes, Your Honor.
3             So what he would like to do, ideally, is actually
4    return to a federal facility.  He is just very concerned
5    that he is not going to get the medical care that he needs
6    there in a state facility under whatever, you know, sort of
7    arrangement there is between the marshal service and that
8    facility because -- and my understanding -- again, this is
9    kind of hearsay as I am catching up procedurally.  But, you
10   know, when he needs to get any sort of, you know, treatment,
11   et cetera, it seems to be a very cumbersome process whereby
12   he has got to go through the facility there, then they have
13   to contact the marshals, the marshals have to give their
14   approval, et cetera.
15            So, from his standpoint, he just wants to make
16   sure -- you know, because of the conditions that he has --
17   you know, my understanding is speed is kind of the essence
18   with that being -- (audio distorted) some of these
19   treatments and surgeries perhaps -- that he wants to have,
20   kind of, the most efficient, sort of, set up so that he can
21   minimize the chance of -- things with respect to his
22   injuries, you know, kind of getting worse with delay and
23   potentially having long-term consequences.  So, ideally, he
24   would like to be in the federal system and actually be put
25   back in a federal prison facility; that is what he is asking

1   for.
2            THE COURT:  Okay.  I mean, I just don't know -- I
3   mean, that's really largely up to the marshal service.  On
4   that I don't have a lot -- I mean, I have a lot more leeway
5   to send him to leave a federal facility -- leave
6   Rappahannock.  But I don't know that they're -- I mean, I
7   will talk to them and see what their -- does he have a
8   particular facility?  As I understood, he said that state
9   facility he was at before was giving him adequate care.
10           But, again, you are getting -- you have the least
11  amount of information probably than any of us, and you need
12  to know.  So we'll just reconvene later this week.
13           I am going to ask Ms. Pasqualini to join -- I
14  don't know if you have also heard, we have had multiple
15  ascertainment of counsel hearings --
16           MR. PIERCE:  I have, Your Honor and, you know, I
17  did speak with her.  You know, she seemed kind of ready to
18  withdraw but, of course, I am happy to have her on to
19  confirm that -- and Mr. Samsel as well.  But I do
20  understand -- I do understand that there has been some back
21  and forth, so I hear you.
22           THE COURT:  And I would anticipate she wouldn't
23  say anything at the hearing, so I am happy to volunteer her
24  time; but I think it would be -- just to hear directly from
25  Mr. Samsel.  He just expressed to me the last time that he

|   |   |
|---|---|
| 1 | thought, like, it was difficult for him to make a decision |
| 2 | about who to represent him; and he felt that he was in a |
| 3 | tough spot where he was hearing different things.  This was |
| 4 | not from you; it was from the previous -- counsel too.  You |
| 5 | are counsel, so I will say "you" for ease of reference. |
| 6 | So I just want him to, again, feel like he is not |
| 7 | getting railroaded.  It makes sense to me if he wants to go |
| 8 | with you, that's fine; I just need him to say that while you |
| 9 | are there.  I just don't want him to say later on:  Well, if |
| 10 | Ms. Pasqualini was on, I would have had the chance to talk |
| 11 | to her.  So we'll make our record. |
| 12 | MR. PIERCE:  Of course, Your Honor. |
| 13 | THE COURT:  And then, at the same time, we'll hear |
| 14 | from him. |
| 15 | So I think at this point -- Ms. Lavigne-Rhodes, do |
| 16 | you want to set a date for this week or do you want to first |
| 17 | hear from -- do you want to first hear from Rappahannock? |
| 18 | Or how do you want to do it? |
| 19 | THE COURTROOM DEPUTY:  We can do -- when -- it's |
| 20 | really hard at Rappahannock.  If everyone can come together |
| 21 | and give me a date and time, I can propose that to |
| 22 | Rappahannock.  And if that -- they can't do it -- |
| 23 | THE COURT:  We'll just do that, |
| 24 | Ms. Lavigne-Rhodes. |
| 25 | THE COURTROOM DEPUTY:  -- I can email you. |

1           THE COURT:  What about Thursday at, like, 2:30 or
2     2 o'clock?
3           MS. ROSBOROUGH:  Your Honor, if I may.
4           THE COURT:  Yes.
5           MS. ROSBOROUGH:  If you would like Ms. Pasqualini
6     present, she is in trial this week.
7           THE COURT:  Okay.
8           MS. ROSBOROUGH:  She said she would not be
9     available until after 5 p.m., or a potential Friday
10    afternoon.
11          THE COURT:  Yeah.  No, that's --
12          MS. ROSBOROUGH:  Otherwise, the government can
13    make any time work.
14          THE COURT:  Thank you, Ms. Rosborough.
15          How about we go into next week then; I would like
16    her to be there.  They are not -- Rappahannock is not going
17    to give us Friday afternoon I don't think.
18          Do you think, Ms. Lavigne-Rhodes?
19          THE COURTROOM DEPUTY:  This Friday?
20          THE COURT:  Yes.
21          THE COURTROOM DEPUTY:  If you want to do late, we
22    can do 4.
23          THE COURT:  Yeah.  I mean, I don't know.  Do you
24    think -- Ms. Rosborough, did you hear maybe they weren't
25    sitting or something like that in the afternoon?

1        MS. ROSBOROUGH: Ms. Pasqualini said in an earlier
2    email to myself and Mr. Pierce that she believes she would
3    be available Friday afternoon. So I assume she believes her
4    trial will have concluded by then.
5        THE COURT: Ms. Lavigne-Rhodes, do you think
6    Rappahannock would accommodate Friday at 4?
7        THE COURTROOM DEPUTY: I can ask them for 2:30.
8    And if they can go as late as 4, I will ask them for
9    4 o'clock. So I will give them two times and, hopefully,
10   they will give us one.
11       THE COURT: How about we do 3:30 or 4, actually.
12   4 in the afternoon means she is not going to be ready until
13   then.
14       THE COURTROOM DEPUTY: Okay. I am fine with that.
15       THE COURT: Let's try that.
16       THE COURTROOM DEPUTY: 3:30?
17       THE COURT: Yes. Let's try 3:30 or 4. If they
18   can't do that -- Mr. Pierce, does that work for you?
19       MR. PIERCE: Yes, Your Honor. Thank you.
20       THE COURT: Great. If that doesn't work, then we
21   can just write an email and communicate about the date. But
22   let's -- right after this, I would like to make sure that
23   Mr. Samsel is getting the medical care he needs. I know
24   he's frustrated at times about being forgotten, so we don't
25   want that to be the case. So I think that's what we'll do.

1           You know, there is -- I am just trying to think
2  about -- in terms of speedy trial.  There is not a pending
3  motion for detention because I have already ordered the
4  defendant detained.  But I think Ms. Rosborough probably
5  should just get a speedy trial waiver if that's something
6  you'd like between now and Friday.
7           MS. ROSBOROUGH:  Yes, Your Honor.
8           I believe we have a speedy trial waiver until
9  June 28th, 2021; however, the government has discussed this
10 with Mr. Pierce and we would likely be asking for a status
11 conference at a later date anyway.  And if we're going to be
12 meeting on Friday and for this ascertainment of counsel and
13 the other issues, the government would recommend we set out
14 a status conference, you know, for another 30 or 45 days.
15          Given that Mr. Pierce is new to the case, there is
16 a pending motion to enter the protective order so that we
17 can begin engaging in more fulsome discovery.
18          We would ask, you know, for 30 or 45 days out from
19 the 28th and that the speedy trial be tolled in the interest
20 of justice.  And, also, I believe that we have the agreement
21 from the defense -- although I will, of course, defer to
22 Mr. Pierce on this to confirm -- to waive the prelim pending
23 that 45-day period.
24          MR. PIERCE:  Yes, that's --
25          THE COURT:  Mr. Pierce, you're cutting out a

1  little bit.
2          MR. PIERCE:  I'm sorry.  I am trying to get to my
3  phone here.
4          Yes, Your Honor, that's -- we're in agreement with
5  that.  No problem.
6          THE COURT:  And I just want to make sure before
7  Mr. Samsel, kind of, kicks things that far down the road --
8  why don't we reconvene on Friday.  In the interest of
9  justice, we probably (audio indiscernible) anyway.  We can
10 still appear this Friday.  And certainly the defendant, at
11 least so far to date, has waived his right within which to
12 have the preliminary hearing in that 21 days, so we'll
13 continue to just keep setting these as status hearings.
14         If for some reason we can't get Mr. Samsel, we'll
15 just get another extension then.  But I just want to make
16 sure he doesn't feel like he is kind of missing out.  So
17 we'll take it -- I think it's in the interest of justice to
18 toll the time between now and Friday, it outweighs the
19 interest of the defendant and the public in a speedy trial;
20 and we'll go from there.
21         Mr. Pierce, anything else from your end?
22         MR. PIERCE:  Nothing else from me, Your Honor.
23 Thank you.
24         THE COURT:  Thanks so much.
25         Ms. Rosborough?

1   MS. ROSBOROUGH: Nothing further, Your Honor.
2 Thank you.
3   THE COURT: Thanks so much. The parties are
4 excused. Thanks again for your patience. Take care.
5   MR. PIERCE: Thank you.
6   (Whereupon, the proceeding concludes, 4:17 p.m.)
7   * * * * *
8   CERTIFICATE
9   I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
certify that the foregoing constitutes a true and accurate
10 transcript of the FTR Gold software proceedings, and is a
full, true, and complete transcript of the proceedings
11 transcribed to the best of my ability.
12   **PLEASE NOTE:** This hearing was held via
videoconference and telephonically in compliance with the
13 COVID-19 pandemic stay-safer-at-home recommendations and is
therefore subject to the limitations associated with the use
14 of technology, including but not limited to telephone signal
interference, static, signal interruptions, and other
15 restrictions and limitations associated with remote court
reporting via telephone, speakerphone, and/or
16 videoconferencing capabilities.
17   This certificate shall be considered null and void
if the transcript is disassembled and/or photocopied in any
18 manner by any party without authorization of the signatory
below.
19
20   Dated this 4th day of July, 2021.
21
  /s/ Elizabeth Saint-Loth, RPR, FCRR
22  Official Court Reporter
23
24
25