IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) ) | Case No. 1:21-cr-00537-TJK |
| RYAN SAMSEL, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

Defense counsel and the government agree on the following: "the injuries sustained by [Mr.] Samsel are extremely alarming . . . regardless of the cause[;] that the defense has just cause for concern, and the Government is also concerned[;]" "the facts surrounding [Mr.] Samsel's conditions of confinement, medical care, and the three different incidents (one at the D.C. Jail, one at CVRJ, and one at Northern Neck) remain unclear [and] those facts and the conditions of confinement can be investigated[;]" and that "the Government does not have access to all of the medical records defense [counsel] posses." Status Report at 2 (ECF No. 57). Mr. Samsel disagrees, however, that the conditions of Mr. Samsel's confinement are not properly before this Court. Contrary to its assertion, the government clearly is "in a position to opine" and has – in addition to the lengthy status report gratuitously summarizing the charges as against Mr. Samsel as well as the "conditions," or circumstances, of his confinement, the government has opined through its actions, by seeking Mr. Samsel's pretrial detention in "protective custody," effectively solitary confinement, as well as by seeking to exclude time under the Speedy Trial Act while it investigates this case. Given the nature and circumstances surrounding Mr. Samsel's detention, which give rise to concern by both defense counsel *and* the government,

Page **1** of **11**

this Court should deny any request to further toll the Speedy Trial Act, at least while Mr. Samsel remains detained and thus subject to these conditions of confinement.

I. **BACKGROUND**

On January 29, 2021, Defendant Ryan Samsel was charged by complaint with various offenses related to the allegation that he was present at the Capitol Building during the violence that occurred there on January 6, 2021. Complaint (January 29, 2021) (ECF No. 1). Mr. Samsel was arrested on January 30, 2021 and had his initial appearance on February 19, 2021 before Magistrate Judge Robin M. Meriweather.

Relevant to the government's request to further toll Mr. Samsel's Constitutional right to a speedy trial is the fact that after his arrest, on or about March 21, 2021, Mr. Samsel was assaulted by correctional officers at the District of Columbia Department of Corrections. After being treated at Howard University Hospital, Mr. Samsel was diagnosed with the following serious medical conditions: a fractured orbital floor, an acute kidney injury, bilateral eye ecchymosis, right wrist scapholunate joint widening, bilateral wrist injuries, bilateral nasal bone fracture and thoracic outlet syndrome. As a result, Mr. Samsel suffers from partial blindness in his right eye (likely related to nerve damage), and suffers from chronic pain. Emergency Mot. for Medical Treatment at 2 (ECF No. 49). At Mr. Samsel's then-attorney's request, Mr. Samsel was transferred from the D.C. Jail to Rappahannock Regional Jail in Stafford, Virginia, on April 6, 2021.

On May 24, 2021, Mr. Samsel, though prior counsel, filed a motion for release from federal custody, Mot. for Release from Custody (ECF No. 23), and on June 4, 2021, Magistrate Judge Faruqui ordered that Mr. Samsel be released to the custody of the Commonwealth of Pennsylvania. Thereafter, however, Mr. Samsel retained new counsel, who advised the Court

that Mr. Samsel did not wish to be transferred and Magistrate Judge Faruqui stayed the transfer. Order (ECF No. 30).

On August 12, 2021, the undersigned filed a motion for the substitution of counsel, which the Court granted on August 16, 2021. Mot. to Substitute Att'y (ECF No. 42). Mr. Samsel was subsequently indicted on August 25, 2021 and charged with seven (7) counts all related to the allegation that he was present at the Capitol Building on January 6. Indictment (August 25, 2021) (ECF No. 46). On September 14, 2021, this Court held an arraignment at which Mr. Samsel pleaded not guilty to each of the counts in the indictment.

Again, relevant to the government's request to delay Mr. Samsel's Constitutional right to a speedy trial, since his arraignment, Mr. Samsel has suffered injuries from three separate incidents with correctional officers at multiple facilities and has spent a vast majority of his pretrial detention in "protective custody" or solitary confinement with no time outside.

In addition to the assault at the D.C. Jail, following the last hearing before this court on September 14, 2021, at which time defense counsel expressed concern regarding whether Mr. Samsel was receiving necessary medical treatment, the next day, September 15, 2021, while in the process of being transferred between cells, Mr. Samsel was involved in an incident where claims he was "dropped while being removed" by an officer from his cell and, it is undisputed that he suffered injuries. This incident again resulted in Mr. Samsel, after delays, being taken to the emergency room, where Mr. Samsel complained of suffering from a concussion (although defense counsel has yet to receive medical records from this treatment, CVRJ records reflect that Mr. Samsel vomited during the night). Second Status Report re Medical Records (ECF No. 54).

After this incident, Mr. Samsel was placed in solitary confinement where he remained under 24/7 surveillance, in a cell with no windows and without access to time outside, and where

the lights remained on 24/7.  These conditions of Mr. Samsel's confinement persisted until September 29, 2021, when he was transferred to the Northern Neck Regional Jail in Warsaw, Virginia.  According to the USMS, this transfer occurred "[p]er the request of [Central Regional Virginia Jail] superintendent."  Second Status Report re Medical Records at 1-3 (ECF No. 54).

Following his transfer to NNRJ, and despite numerous requests for the same, Mr. Samsel was denied access to his counsel by telephone (or videoconference) for nearly five days.  Of note shortly after his transfer, on October 7, 2021, *The New York Times* published an article referencing Mr. Samsel, which resulted in the government's requesting he be placed in "protective custody," or solitary confinement.  Despite this request, defense counsel remained unable to communicate with Mr. Samsel until Tuesday, October 12, 2021, when Mr. Samsel was finally permitted a video conference with Mr. Samsel and at which, among other things, the conditions of his confinement were discussed.  Of note, during this call Mr. Samsel was clearly handcuffed.  Immediately following this call, as he was leaving the videoconference room, Mr. Samsel was involved in an altercation where the NNRJ reports, Mr. Samsel refused to place his cuffs on behind his back, and the "necessary force was used to gain compliance."  This allegedly "necessary force" was reportedly used several times over the course of his physical transfer from the video conference room to his cell, once again, after delays, requiring treatment by a nearby hospital.  Mr. Samsel does not dispute that he had to go to the hospital, which he asked for urgently, but was delayed until the next morning.

The next day, undersigned counsel went to visit with Mr. Samsel at the facility, NNRJ, and was able to meet with Mr. Samsel in a room, where multiple bruises on his head as well as severe swelling of his hands was observed.  Subsequently, the next morning counsel also secured an unrecorded video call with Mr. Samsel, where bruises were visible on his face and he had a

black eye at which time counsel could take a picture through the screen.  Third Status Report re Medical Records at 2-4 (ECF No. 55).

In addition, Mr. Samsel suffers from cystic condition in his chest, a condition that predated his arrest and detention, but one that has likely been exacerbated by his altercations with correctional officers and for which he has yet to receive meaningful treatment while detained pretrial.

By way of summary, at this court's last status hearing, defense counsel expressed concern at Mr. Samsel's having not received necessary medical treatment nor having access to his own medical records.  Now, 41 days later, these issues persist.  NNRJ, for example, has advised that nearly two weeks after Mr. Samsel's arrival at that facility they had yet to receive Mr. Samsel's medical records from CVRJ.  Thus, as of October 14, 2021 (the last date upon which any records have been provided by the U.S. Marshal's Service), NNRJ had no knowledge of medical orders for treatment of a cystic condition, for MRIs and treatment for loss of strength and range of motion, as well as for ophthalmology follow ups.  This at "the last an only other facility [the U.S. Marshal's Service] ha[s] left that can house Samsel."  Understandably then, Mr. Samsel desires to exercise his right to a speedy trial.

## II.    LEGAL STANDARD

The Speedy Trial Act generally requires trials to commence within 70 days of the filing of an indictment, or the appearance of the defendant "before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1).  "The time limits of the Speedy Trial Act begin to run automatically rather than upon request," *New York v. Hill*, 528 U.S. 110, 117 n.2 (2000), and "a defendant may not prospectively waive the application of the Act."  *Zedner v. United States*, 547 U.S. 489, 500 (2006).   "A criminal defendant's right

to a speedy trial is 'one of the most basic rights preserved by our Constitution." *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967). Congress chose to safeguard this important right through the rigid procedural requirements of the Speedy Trial Act." *United States v. Ammar*, 842 F.3d 1203, 1212-13 (2016).

However, the Speedy Trial Act also provides that certain "periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence." §3161(h). One such excludable period is:

> (7)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial . . .

§ 3161(h)(7)(A). The Act then sets out several factors, which the Government relies on in their Motion, "among others, which a judge shall consider in determining whether to grant a continuance" on "ends of justice" grounds pursuant to § 3161(h)(7)(A). These factors include:

> (ii) Whether the case is so unusual or so complex, due to the number of defendant, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
>
> . . .
>
> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

§ 3161(h)(7)(B). Finally, this portion of the Speedy Trial Act provides that "[n]o continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the

court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." § 3161(h)(7)(C).

Before granting an "ends-of-justice" continuance under the Speedy Trial Act, the Court must determine whether "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. §3161(h)(7)(A).  As the Supreme Court has explained, this balancing of interests is determined on a case-by-case basis: The "ends-of-justice" provision "gives the district court discretion – within limits and subject to specific procedures – to accommodate limited delays for *case-specific* needs."  *Zedner*, 547 U.S. at 499 (emphasis added).

### III.   ARGUMENT

The government has not established that the ends of justice require tolling the Speedy Trial Act in the instant case.  While this may be a complex case with an ongoing investigation, it was neither Mr. Samsel's choice to pursue charges in January nor to seek pretrial detention.  To wit, the government claims it interviewed "another law enforcement officer" "and "anticipates a Superseding Indictment will be filed with additional charges regarding Defendant Samsel's interactions with that officer."  Mott. Exclude Time at 56 (ECF No. 56).  This interview did not occur until *September 21, 2021*, nearly *eight months after* Mr. Samsel's arrest.  This Court may not be able to dictate how (or when) the government chooses to indict its cases, but it *can* control the timing within which it does so by affording Mr. Samsel his constitutional right to a speedy trial.

This situation is exacerbated by the fact that since the time when Mr. Samsel was initially detained, on January 30, Mr. Samsel has been moved between four different facilities, has been involved in numerous altercations with correctional officers that are now under investigation, has

had difficulty obtaining necessary medical treatment following these incidents, and continues to have difficulty obtaining the medical records, incident reports, and related documentation from these incidents.

To be sure, additional investigation is necessary to understand the precise nature and circumstances of the altercations Mr. Samsel has had with correctional officers. As noted however, during his pretrial detention, although Mr. Samsel has been housed at four different facilities and primarily kept in "protective custody," effectively solitary confinement, and has been involved in altercations with correctional officers at three of these facilities. It remains a distinct possibility that the longer Mr. Samsel remains detained pretrial, the longer he is unnecessarily subjected to what one facility has described as "necessary force" despite remaining innocent until proven otherwise.

The possibility that Mr. Samsel is unjustly subjected to abuse by correctional officers is exacerbated by the difficulty he has had obtaining *his own* medical records or records related to the incidents that the government does not dispute took place. Even those charged with his care have acknowledged the same, with officials at NNRJ acknowledging that despite Mr. Samel's detention there for nearly two weeks, they had yet to be provided with Mr. Samsel's medical records. Without access to his own medical records, Mr. Samsel remains unable to demand the treatment necessary for the conditions from which he suffers.

 Mr. Samsel's inability to receive necessary medical treatment outweighs the government's need for additional time to complete its "unusual and complex" investigation and the public interest is not served by subjecting pretrial detainees such as Mr. Samsel to the conditions of confinement described herein and otherwise acknowledged by the government.

## CONCLUSION

For the foregoing reasons, Mr. Samsel respectfully requests that this Court deny the government's motion to exclude time under the Speedy Trial Act.

[SIGNATURE ON NEXT PAGE]

Dated: October 25, 2021

Respectfully submitted,

      */s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC 20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

      */s/* Juli Z. Haller
Juli Z. Haller, (D.C. Bar No.466921)
The Law Offices of Julia Haller
601 Pennsylvania Avenue, N.W., Suite 900
Washington, DC 20004
Telephone: (202) 729-2201
HallerJulia@outlook.com

*Counsel for Defendant Ryan Samsel*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**RYAN SAMSEL,**<br><br>**Defendant.** | )<br>)<br>)   Criminal No. 1:21-cr-00537-TJK<br>)<br>)<br>)<br>)<br>)<br>) |

**CERTIFICATE OF SERVICE**

On October 25, 2021, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

                                                       */s/ Stanley E. Woodward, Jr.*
                                      Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                      BRAND WOODWARD LAW, LP
                                      1808 Park Road NW
                                      Washington, DC  20010
                                      202-996-7447 (telephone)
                                      202-996-0113 (facsimile)
                                      Stanley@BrandWoodwardLaw.com

                                      *Counsel for Defendant Ryan Samsel*