IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| v. | ) ) Case No. 1:21-cr-00537-JMC ) |
| RYAN SAMSEL, | ) ) |
| Defendant. | ) ) ) |

## DEFENDANT RYAN SAMSEL'S REPLY IN SUPPORT OF MOTION FOR REVIEW AND REVOCATION OF DETENTION ORDER

"The crux of the constitutional justification for preventative detention under the Bail Reform Act is that, '[w]hen the Government proves by clear and convincing evidence that an arrestee presents an *identified and articulable threat* to an individual or the community, . . . a court may disable the arrestee *from executing that threat.*'" *United States v. Munchel*, 991 F.3d 1273, at 1282 (D.C. Cir. 2021) (emphasis added) (*quoting United States v. Salerno*, 481 U.S. 739, 751 (1987)). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755. *See also United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) ("[F]ederal law has traditionally provided that a person arrested for a non-capital offense shall be admitted to bail. Only in rare circumstances should release be denied. Doubts regarding the propriety of release should be resolved in favor of the defendant." (internal citations omitted)). The government has not demonstrated, let alone demonstrated by clear and convincing evidence, that Mr. Samsel poses an "identified and articulable threat" to any individual or the community as a whole, let alone that his continued detention would "disable" Mr. Samsel from "executing that threat." They have not because they can not.

      A.      *The Government Misrepresents the Procedural Posture of this Case.*

The government asserts that Mr. Samsel must continue to be detained because his danger to the community *has not changed*, but this observation is irrelevant. "A defendant ordered detained by a magistrate judge may file 'a motion for revocation or amendment to the order' with 'the court having original jurisdiction over the offense.'" *United States v. Klein*, 533 F. Supp. 3d 1 at 7. This is Mr. Samsel's first request for a U.S. District Court judge to review his pretrial detention determination. "Although the D.C. Circuit has not ruled on the matter, every circuit to consider the issue has found that a magistrate judge's detention order is subject to *de novo* review." *Id.* See also *Munchel*, 991 F.3d at 1279 (acknowledging that the District Court applied a *de novo* review of a magistrate judge's pretrial detention determination). Thus, this Court's *de novo* review of the magistrate judge's initial detention determination now *can benefit* from what we have learned from Mr. Samsel's fifteen (15) months of detention.

To that end, the government does not dispute that "while detained, the defendant has been injured." Gov't Opp. at 22 (April 15, 2022) (ECF No. 147). The government appears to suggest, however, that the cause of Mr. Samsel's injuries is somehow irrelevant to this Court's evaluation of Mr. Samsel's history and characteristics. For example, the government gratuitously notes that: "[t]he cause of [Mr. Samsel's] injuries remain[] under the subject of a separate investigation," *id.*, and that, "[i]f the defendant has issues with conditions at Lewisburg, he is not without recourse," because he can bring a separate civil and/or administrative action challenging the conditions of his confinement. *Id.* at 23. But there is a reason the Eighth Amendment to the Constitution does not apply to pretrial determinations. *See United States v. Lee*, 451 F. Supp. 3d 1, 8 (D.D.C. 2020).

Instead, Mr. Samsel submits that this Court need not ignore the prior finding by Judge Kelly that, "on the entire record here, there is reason to believe that Defendant requires medical

treatment that may be more readily available at the Pennsylvania facility." Order at 1 (Nov. 29, 2021) (ECF No. 65). The government does not dispute that since Judge Kelly's finding, Mr. Samsel has still not seen the medical specialists that his medical records indicate are necessitated by the conditions and/or injuries which with he presented at the time of his arrest and that have manifested – whatever the cause – since his arrest[1].

The court's order in *United States v. Lee*, 451 F. Supp. 3d 1 (D.D.C. 2020), is readily distinguishable from the facts and circumstances with which this Court is presented. *First*, here Mr. Samsel seeks an initial review of the magistrate judge's pretrial determination. There, the defendant sought to reopen his pretrial detention determination. *Lee*, 451 F. Supp. 3d at 6. *Second*, despite not reopening the record, Judge Brown Jackson *did consider* the defendant's conditions of confinement, concluded that the defendant's "personal circumstances are not like those of other defendants for whom COVID-19 has a readily material bearing—e.g., those who have underlying medical conditions and thus are reasonably maintain that COVID-19 casts new

---

[1] On August 5, 2021, Mr. Samsel was taken to the University of Virginia Medical Center for an examination in which the doctor concluded that: "…Recommend PCP (Primary Care Provider) follow up for gynecomastia. Given bloody nipple discharge, consultation with breast surgery should be considered." To date, there has been no follow-up for the chest pain, or the symptoms related thereto, which includes the concerns that could be affiliated with the growth of a cystic condition. The records further showed that he had suffered "Injury of left subclavian vein, subsequent encounter (primary)," which meant that he suffers from pain in his extremities, that has gone untreated. There has been not only no physical therapy, but Mr. Samsel has been held continuously for long periods of time in 24/7 lockdown (often at the request of the government to put him in what they refer to as "protective custody" – which meant keeping him in a small holding cell without access to the outside, or any space for movement, much less exercise. On September 15, 2021, the day after the Court's status conference, Mr. Samsel was transferred back to solitary confinement. At CVRJ, it was reported in their own records that, "Patient states that he was dropped while being removed from a block and hit his head, [and the assessment noted was that] Patient has mild redness on the left side of his face at the cheek bone area. No lacerations, lesions, no bleeding noted. Patient has no lumps, bumps or bruising on his head or face. Patient has c/o HA. At that time, undersigned counsel had had already scheduled an unrecorded video call with Mr. Samsel for Friday September 17, 2021, but officials with the CVRJ inexplicably did not make Mr. Samsel available for the call. The call, which had been arranged prior to the incident in question, would have allowed defense counsel to see any injuries sustained by Mr. Samsel during his transfer to solitary confinement, where Mr. Samsel remained. Undersigned counsel further submits that the head injuries from the incidents at both facilities CVRJ and NNRJ, to date have not been genuinely examined. Moreover, the injury to the head post the March 21, 2021 incident in DC when Mr. Samsel was viciously assaulted while in the custody of the District of Columbia Department of Corrections, and in "administrative segregation."

light on the individual 'characteristics' that the court previously considered when deciding whether detention was required." *Id.* at 7.  Here, Mr. Samsel undisputedly suffers from a variety of serious medical conditions and the government "agrees that [Mr. Samsel] should receive proper medical care." Gov't Opp. at 22 (April 15, 2022) (ECF No. 147).  He submits that additional medical care is needed, but for many months now he has been unable to see the specialists or seek the treatment that he needs – and has not only been refused medical treatment, but has been held in solitary confinement kept with the lights on at all times.  *Third*, Judge Brown Jackson found that the "the dangers that [the defendant's] release poses in the age of COVID-19 are substantial, insofar as they include not only the risk that he will continue to engage in the same types of unlawful and potentially dangerous conduct that led to both his initial conviction and the charge of unlawful firearms possession that is at issue . . ." *Id.* at 7.  Thus, and once again, Judge Brown Jackson *expressly did consider* the conditions of confinement as weighed against the risk a defendant posed to an individual or the community.  *Finally*, Judge Brown Jackson appears to have expressly contemplated the precise scenario with which this Court is now presented:  "Indeed, the Court can imagine a situation in which temporary release might be warranted notwithstanding the lack of any individualized reason for releasing the particular detainee, such as the potentially compelling generalized reason of indifference, ineptitude, or sheer inability on the part of corrections authorities to ensure the safety of the prison's population." *Id.* at 9.

      We do not yet know the cause of the altercations Mr. Samsel has endured while he has been detained pretrial.  Defense counsel has requested records that would likely elucidate the same, but the U.S. Marshals Service has refused to provide them, and the government has recommended that Mr. Samsel pursue collateral relief through a civil or administrative action if

he wants them.² Nor can the government refute that the same day *The New York Times* ran an article containing sensitive information about Mr. Samsel, *the government* requested that he be placed in protective custody (solitary confinement). *See Mot.* at 7 (April 1, 2022) (ECF No. 142). Most recently, the government conceded it disclosed grand jury transcripts and exhibits in violation of Rule 6(e) of the Federal Rules of Criminal Procedure. Specifically, as the Court is aware, on January 27, 2022, the Court Ordered the government to complete discovery by February 24, 2022. Accordingly, that day the government produced grand jury transcripts and materials to defense counsel. *See* Notice Ex. 1 at 33 (Feb. 24, 2022). Then, only after this disclosure, did the government seek permission from the Court to produce these materials pursuant to Rule 6(e). *See* Mot. (April 11, 202) (ECF No. 146).

    Defense counsel has no direct evidence to question the otherwise coincidental nature of these incidents, but would nevertheless again suggest that this Court need not ignore these facts as part of its *de novo* determination of whether Mr. Samsel must remain detained pretrial. These facts are relevant to the question of whether Mr. Samsel poses an "identified and articulable threat" to an individual or the community, from which his detention would "disable" him from "executing."

---

² While the government may dispute the cause of Mr. Samsel's injuries while detained and in "solitary confinement," Defendant Samsel will readily submit that the "punishment did not fit the crime." Also, of note is the fact that there are no incident reports provided to defense counsel, which USMS would typically require for use of force incidents. And defense counsel has previously documented how the incident at NNRJ purportedly involved Mr. Samsel having "provoked," for example, by disputing the need to be hand cuffed behind his back when he was already hand cuffed in front; and had a jail doctor's permission for not being handcuffed from behind due to the pain in his arms, the following documented vomiting and loss of consciousness, the visible marks all over his body and primarily the bumps and bruises protruding from his head, first seen by his counsel then photographed, and even the need to go to the emergency room… was in no way a reasonable response.

> B. *The Government Cannot Establish by Clear and Convincing Evidence that Mr. Samsel Presents an Identified and Articulable Threat to an Individual or the Community.*

The government blanketly submits that it has established that Mr. Samsel presents an identified and articulable threat to an individual or the community based upon his: "[alleged] assaults against law enforcement on January 6, 2021, and his *nine* criminal convictions that include assaults and witness intimidation, and the reports from victims that describe acts of brutality." Gov't Opp. at 22 (April 15, 2022) (ECF No. 147). The government concedes its own inability to overcome the high burden of proof with which it is confronted – clear and convincing evidence – by callously asserting: "[t]he defendant's danger to the community if released is *cognizable*. . . ." *Id.* The infringement of Mr. Samsel's most sacred right – his own liberty – requires more than such *ipsit dixit*. Rather, clear and convincing evidence means proof that the defendant actually poses a danger to the community, not that a defendant "in theory" poses a danger. *United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991). Only when there is a "strong probability that a person will commit additional crimes if released" is the community interest in safety sufficiently compelling to overcome the criminal defendant's right to liberty. *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988).

While it is not for Mr. Samsel to demonstrate that he poses *no articulable threat* to an individual or the community he can readily do so. The government cites to Mr. Samsel's criminal history to suggest that because he has pleaded guilty to (and thus been convicted of) misdemeanors involving *allegations* of violence, he now poses a future risk to some inarticulable individual. The government does not allege that Mr. Samsel poses any threat to his past complainants – indeed, the government does not know the identity of these individuals or anything about their cases other than what is alleged in their complaints (or accompanying police reports). Nor does the government allege that Mr. Samsel poses some threat to any of the


Capitol Police Officers he's alleged to have assaulted, let alone any other individual associated with the events of January 6. Again, the government does not, because it can not.

Moreover, it would strain credulity to suggest that Mr. Samsel somehow poses a future threat to the community by virtue of his alleged past participation in the riot at the Capitol on January 6. All agree that the events of that day were unprecedented and are unlikely to happen again in the future, including by punishing those found beyond a reasonable doubt to have participated in those events to begin with. Regardless, the government is not so cavalier as to suggest that Mr. Samsel poses any future threat to the Capitol or the community as a whole.

Rather, the government, citing *United States v. Fairlamb*, 535 F. Supp. 3d 30 (D.D.C. 2021), suggests that "[a] defendant's history of violence offers some of the strongest evidence of his future dangerousness" and that "even if others are only likely to commit violence as part of a mob, this defendant's criminal history demonstrates he is willing to commit violence without one." *Id.* at 43-44. *Fairlamb* is neither binding nor persuasive – the court failed to identify the specifically articulable threat that *that* defendant posed to an individual or the community. In so doing, the court rejected the reasoned interpretation of *Munchel* by Judge Bates in his order revoking pretrial detention of a January 6 defendant. *United States v. Klein*, 553 F. Supp. 3d 1 (D.D.C. 2021).

While Judge Bates acknowledged the "broad divisions drawn in *Munchel* [as] offer[ing] some parameters for differentiating among participants at the January 6 events[,]" the court refused to accept the government's blanket allegation that the allegation of violent participation in the January 6 riot alone warranted detention. Rather, *Munchel* admonishes courts in this District that, "a finding of dangerousness must be predicated on a *concrete* determination that the defendant poses a *continued*, 'identified and articulable threat to the community' or to another

person." *Klein*, 553 F.Supp. 3d at 18 (emphasis original).  The mere fact that a defendant is alleged to have engaged in violence on a day as unprecedented as January 6 does not *per se* establish *that* defendant's dangerousness to the community (let alone an individual).

Moreover, *Fairlamb* is distinguishable from the case at bar.  There, the court found that "the defendant intended to injure Officer Z.B. when he shoved and punched him."  535 F. Supp. 3d at 44.  Here, like in *Klein*, the government cannot establish that Mr. Samsel intended to injure others.  *See Klein*, 553 F. Supp. 3d at 15 ("[The defendant's] conduct was forceful, relentless, and defiant, but his confrontations with law enforcement were considerably less violent than many others that day, and the record does not establish that he intended to injure others.").  Similarly, Mr. Samsel's criminal history is readily distinguishable from the history before the court in *Fairlamb*.

At the outset, the government cannot establish, let alone establish by clear and convincing evidence, the conduct for which Mr. Samsel was actually convicted.  Cavalierly, the government refers the Court to Pretrial Services' initial report and its *summary* of the dispositions of Mr. Samsel's prior offenses.  *See* Pretrial Services Report (Feb. 19, 2021) (ECF No. 6).  Although the Court may rely on "investigatory descriptions of evidence (and similar hearsay)," it may do so only where the Court, "reasonably concludes that those descriptions, reports, and similar evidence, in the particular circumstances of the hearing, are reliable." *United States v. Acevedo-Ramos*, 755 F.2d 203, 207 (1st Cir. 1985).  The government proffers no information or other indicia of reliability to corroborate the assumption that the offenses for which *Mr. Samsel pleaded guilty and served his punishment* serve to prove, beyond clear and convincing evidence, that Mr. Samsel "has an extensive and disturbing criminal history."  Gov't Opp. at 13 (April 15, 2022) (ECF No. 147).

8

For example, the government advises the Court that in May 2006, Mr. Samsel was arrested, "because [he] tried to run someone off the road . . . ." Go't Opp. at 13 (April 15, 2022) (ECF No. 147). In fact, we know only that Mr. Samsel *was alleged* to have engaged in this conduct, *see* Gov't Opp. Ex. 1 (Feb. 6, 2021) (ECF No. 25), and that the offenses to which he pleaded guilty *were misdemeanors*.[3]

Next, the government advises the Court that Mr. Samsel was arrested in June 2007 because, "[he] got into another man's car and began hitting him in the face." Gov't Opp. at 13-14 (April 15, 2022) (ECF No. 147). But again, we know only what Mr. Samsel *was alleged* to have done and know of no other facts and circumstances surrounding Mr. Samsel's arrest and the eventual disposition of this matter – only that he ultimately again pleaded guilty to *misdemeanor offenses*.

Next, the government advises the Court that in July 2011, Mr. Samsel was, "convicted of simple assault, reckless endangerment, disorderly conduct, and unlawful restraint, as well as for intimidation of witness, *for* choking and beating his pregnant girlfriend." Gov't Opp. at 14-15 (April 15, 2022) (ECF No. 147). Again, however, the government cites only the "reporting disposition" of Pretrial Services' summary report. In prior submissions, the government instead relies on witness statements, specifically of two sisters, *both of whom admit they lied to the police.* Gov't Opp. Ex. 4 (Feb. 6, 2021) (ECF No. 25). Indeed, on information and belief, at least one of the sisters – Mr. Samsel's ex-girlfriend – was also convicted after she used her twin-sister's driver's license to visit him at the jail where she offered to change her testimony. Of note, that he allegedly schemed with his ex-girlfriend to subvert her testimony *is the only non-*

---

[3] The government also highlights that Mr. Samsel was sentenced to a year of probation for a drug-related offense, but the government otherwise provided no information concerning the allegations or allocution related of this offense. *Id.* We do know that the charge must not have been serious otherwise it would have had some effect on his probation for his prior 2006 conviction.

9

*misdemeanor offense* for which he has been sentenced and involves conduct readily distinguishable from the conduct with which he is charged related to January 6.

Finally, the government advises the Court that in February 2017,[4] Mr. Samsel was convicted of simple assault and "harassment-subject other to physical contact," after a victim "reported numerous assaults by [Mr. Samsel]." Gov't Opp. at 15 (April 15, 2022) (ECF No. 147). Once again, however, Mr. Samsel was only charged with, and pleaded guilty to, *misdemeanor offenses.*[5]

\* \* \*

In summary, the government knows that it cannot establish by clear and convincing evidence that Mr. Samsel poses any danger, let alone identify an articulable threat to an individual or the community and that his continued pretrial detention disables him from executing on any such threat. *See Munchel*, 2021 U.S. App. LEXIS 8810, at \*13. The government also knows that the conduct with which it has charged Mr. Samsel is alone insufficient to warrant his continued pretrial detention. *See Klein*, 553 F.Supp. 3d at 18 ("[A] finding of dangerousness must be predicated on a *concrete* determination that the defendant poses a *continued*, 'identified and articulable threat to the community' or to another person." (emphasis original)). As a last resort, the government contends that Mr. Samsel's criminal history warrants pretrial detention. *See* Gov't Opp. at 16 (April 15, 2022) (ECF No. 147) ("[Mr. Samsel's] history supports a finding of dangerousness as well as detention."). However, the government's proffer of witness accusations lacking any fact-finding subject to the rigors of the

---

[4] Defense counsel inadvertently represented that the most recent conduct for which he had been convicted occurred more than ten years ago. The government is correct that it occurred nearly seven (7) years ago.

[5] In its most-recent filing, the government also references a complainant "coming forward" in New Jersey to seek a restraining order as against Mr. Samsel. *See* Gov't Opp. at 15 (April 15, 2022) (ECF No. 147). Again, we know little about the nature of this incident and, upon information and belief, it was summarily dismissed (or will be) for want of prosecution.

10

Due Process to which Mr. Samsel is entitled do not give rise to the requisite "reliability," *see Acevedo-Ramos*, 755 F.2d at 207, that warrant this Court's reliance on the allegations therein for the purposes of reaching a determination that Mr. Samsel must be detained pretrial to "disable" him from executing on any "particular threat." *See Munchel*, 2021 U.S. App. LEXIS 8810, at *13.

      C.    *The Government Has Not Established That There Are No Conditions or Combination of Conditions that Would Negate the Risk of Any Dangerousness Posed by Mr. Klein.*

Just as the government has summarily failed to identify, by clear and convincing evidence, any articulable threat posed by Mr. Samsel to an individual or the community, it has failed to meet its burden of establishing that no condition or combination of conditions is sufficient to negate the risk of any such dangerousness. *See United States v. Bell*, 209 F. Supp. 3d 275, 277 (D.D.C. 2016). The government submits, without any foundation, that GPS monitoring and/or home confinement, "will not preclude another assault." Gov't Opp. at 19 (April 15, 2022) (ECF No. 147). Their bare assertion begs the question – an assault of whom? Obviously, there is no risk of an assault as against Capitol Police Officers within Mr. Samsel's own home. Similarly, the government highlights its desperation by incredulously suggesting that his release would somehow enable him to, "as reported by victims, [have] relatives discourage victims from testifying," *id.*, an offense assertion that warrants no response.

Even were the Court persuaded by the government's histrionics, it should nevertheless order, in the alternative, Mr. Samsel's temporary release so as to allow him to seek the third-party medical treatment arranged while he was in the custody of the Pennsylvania Department of Corrections and ordered medically necessary by his medical providers. Mr. Samsel can be required to regularly confirm with the Court and/or pretrial services that such medical treatment remains necessary and that treatment continues to be scheduled and received, and he can be

placed in the custody of a family member, such as the Aunt and Uncle who raised him, or a close family friend, such as a former government official known to the government, subject to either household's approval by pretrial services.  *See* 18 U.S.C. § 3142(i).

## CONCLUSION

Mr. Samsel has now been detained pretrial for more than fifteen (15) months based largely on the government's allegation that he participated in the violence that occurred at the Capitol Building on January 6, 2021.  The government has superseded his indictment to include defendants who are only at the early stages of their cases, despite the fact that there is no allegation that he knows or planned to act with any of the co-defendants.  Because the government has failed to articulate a specific threat to an individual or the community as posed by Mr. Samsel, let alone that no condition or combination of conditions of release would reasonably assure such safety, the Court must Order Mr. Samsel's release subject to any conditions the Court deems necessary to assure the safety of his community.

[SIGNATURE ON NEXT PAGE]

Dated: April 22, 2022

Respectfully submitted,

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD, ATTORNEYS AT LAW
1808 Park Road NW
Washington, DC 20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*/s/ Juli Z. Haller*
Juli Z. Haller, (DC 466921)
The Law Offices of Julia Haller
601 Pennsylvania Avenue, N.W., Suite 900
Washington, DC 20004
Telephone: (202) 729-2201
HallerJulia@outlook.com

*Counsel for Defendant Ryan Samsel*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) )  ) Case No. 1:21-cr-00537-JMC |
| v. | ) ) |
| **RYAN SAMSEL**, | ) ) |
| Defendant. | ) ) |

## CERTIFICATE OF SERVICE

On April 22, 2022, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to the following registered parties:

_/s/ Stanley E. Woodward, Jr._
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD, ATTORNEYS AT LAW
1808 Park Road NW
Washington, DC 20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Ryan Samsel*