UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case Number 1:21-cr-00537-JMC |
| RYAN SAMSEL, et al., : | |
| : | |
| Defendants. : | |

## DECLARATION OF ANDREW EDINGER, M.D.

I, Andrew Edinger, M.D., hereby state:

1. I am currently employed by the Federal Bureau of Prisons ("BOP") as the Clinical Director at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"). I have been employed by the BOP since 2011.

2. On April 21, 2022, I submitted a memorandum regarding the medical status of detainee Ryan Samsel, register number 28332-509. After I submitted this memorandum, I received copies of Mr. Samsel's prior medical records. These records were informative and prompted me to revise my assessment.

3. Mr. Samsel's verbal statements to me regarding his health status were misleading in some areas and outright falsehood in other areas, the specifics of which I will attempt to detail herein.

4. First, Mr. Samsel does have a problem with bilateral venous obstructions to his subclavian veins. He led me to believe that this was a problem that had recently developed within the past 1-2 years; however, the records indicate that this problem had its onset as far back as 2012. Vascular studies in 2018 confirmed bilateral subclavian vein obstructions which were chronic at that time. He had an attempted balloon venoplasty in 2018 that was unsuccessful. He had follow-up ultrasounds in November of 2018 and May of 2019, which continued to show the chronicity of this problem. According to records from the University of Pennsylvania, he was last seen for this problem in 2019, however, he had continued follow up at that institution for other medical problems well into 2020. If this problem was contributing to ongoing symptoms, or if further treatment was considered, there was no documentation that follow-up occurred.

5. Second, Mr. Samsel led me to believe that he had Hodgkin's Lymphoma diagnosed on a lymph node biopsy. This condition would warrant extensive treatment and consideration when dealing with his vascular compromise. There are no comments to this in the records provided. Instead, there is reference to a resolved problem of lymphadenopathy, which occurred in 2015.

6. Third, I specifically asked Mr. Samsel if he had been taking androgenic steroids, which he denied. However, the medical records indicate that he was seen and treated for a problem with low testosterone. In the documents provided to me, he reported to the treating physician that he was purchasing testosterone from the internet and self-administering the injections; thus, his response to me was untrue.

7. When I put all of this information together with my previous assessment, I come to an entirely different set of conclusions:

    - There is no history for Hodgkin's Lymphoma. That means that he does not have an underlying hypercoagulable condition associated with malignancy. Thus, my fear of the formation of additional blood clots is reduced. Also, the prior history of malignancy could alter decision-making regarding future surgeries. This is no longer a problem because he does not have this history.
    - The chronicity of his venous occlusions have provided him enough time to adequately form collateral circulation. This means that he does not require an urgent vascular procedure at this time. This would also explain why he does not have pronounced edema and discoloration to his lower arms.
    - The problem of forming bilateral breast lumps is probably closely linked if not caused by the use of supplemental androgens.
    - I still believe that he will have an ongoing problem with lymphatic drainage in the left axilla. This could result in problems with his left breast region. However, I do not believe that this condition warrants surgery at this time. Surgery could safely be delayed for years based upon symptom progression. At most, I would recommend a vascular and general surgery consultation in time for them to lay out the risks/benefits of surgical intervention.

8. Based upon the new information provided to me, I am no longer worried that we cannot provide Mr. Samsel with appropriate medical care at USP Lewisburg. There are certain precautions with blood pressures and venipunctures that I will utilize for him. These precautions are similar to people who have dialysis fistulas in place. I also see no need for urgent consultation with a surgeon given that his problem is not acute nor requiring urgent intervention. Rather, this is a chronic problem which is years in duration. At this time, I believe that this is a very safe option for him.

I hereby state under penalty of perjury pursuant to the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge.

_____  MD  
Andrew Edinger, M.D.  
Clinical Director  
USP Lewisburg

4/25/2022  
Date