## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case Number 1:21-cr-00537-JMC** |
| **RYAN SAMSEL, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES' RESPONSE IN OPPOSITION
## TO DEFENDANT SAMESEL'S MOTION FOR CONTINUANCE
## OF TRIAL DATE AND ORDER REGARDING MEDICAL TREAMENT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully responds that defendant Ryan Samsel's motion, ECF 229, should be denied.  The motion seeks an order directed to a non-party compelling production to another non-party (or parties) of unspecified records that are not in this Court's possession or located within this district.  The defendant provides no authority supporting such compulsion, which asks this Court to oversee administrative minutiae for operations that Congress has delegated not to the courts but to the executive branch.   The defendant also moves to continue the trial date for this case, but fails to address how a continuance will resolve any issues the defendant raises and offers no relevant legal authority in support of this request.  Accordingly, the defendant's motion should be denied.

### BACKGROUND

A superseding indictment, ECF 80, charges the defendant and four codefendants with serious offenses for his role in the January 6, 2021 attack on the United States Capitol.  The charges against Samsel include Obstruction of Law Enforcement During a Civil Disorder and Aiding and Abetting, in violation of 18 U.S.C. §§ 231(a)(3) and 2 (Counts One and Eleven); two felony counts

related to Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, Inflicting Bodily Injury, and Aiding and Abetting, in violation of 18 U.S.C. §§ 111(a)(1), (b), and 2 (Counts Two and Three); three felony counts relating to disorderly conduct and violence in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752 (Counts Five–Seven); two misdemeanor counts relating to disorderly conduct and violence in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2) and 18 U.S.C. § 2 (Counts Eight and Nine); and Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count Ten), and an additional count charging Samsel with Assaulting, Resisting, or Impeding Certain Officers in violation of  18 U.S.C. § 111(a)(1).

Samsel stipulated to detention before a Philadelphia magistrate judge and did so again before a magistrate judge in this district.  He later moved to revoke the order for his pretrial detention.  This Court denied that motion, and that decision was subsequently affirmed. *United States v. Samsel*, No. 22-3034 (D.C. Cir. July 22, 2022) (per curiam); ECF 196-1.

Throughout the pendency of this case, the defendant has inconsistently raised issues concerning his health, rejecting relief that he advocated for, only to reverse course and seek the same relief again.  Samsel has also obstructed his care, at times by refusing to allow Bureau of Prisons (BOP) providers to examine him, and at other times precluding treatment by refusing to allow laboratory tests before procedures.  This Court ordered Samsel's transfer from USP Lewisburg to the Philadelphia Federal Detention Center (FDC) for an evaluation.  Samsel effectively terminated his treatment by refusing to undergo required screenings. *See* October 30, 2022 Minute Order (noting that "the defendant has refused procedures meant to address his health concerns"). This Court recommended that the United States Marshals Service (USMS) return Samsel to Lewisburg,  ECF 187:3,  noting that its order was "in no way intended to displace Mr.

Samsel's custodians' or related medical professionals' judgment about Mr. Samsel's treatment, such as which medical appointments he needs to attend, or when and where he needs to attend them." ECF 187:3-4.

In the October 3, 2022 minute order, this Court ordered "the Bureau of Prisons to give Defendant another opportunity to complete the required lab testing and receive the surgery recommended by his doctors." The order has caused a high level of concern. The clinical director at USP Lewisburg wrote on October 5, 2022 that Samsel "has a non-emergent non-life threatening condition that has not fundamentally changed since 2020. Furthermore, there are significant risks of infection, bleeding and seroma formation with this surgery. This must be carefully weighed against the potential for little or no benefit in resolving his discomfort." In the clinical director's assessment, "The surgery … has a high potential for complication …" and "It is my opinion that the risks of pursuing surgery for this problem far outweigh the potential benefits from the surgery. I don't believe that this surgery is in his best interest. I am requesting the consults at the behest of the court."

On October 18, 2022, Samsel refused again to have blood drawn for lab testing.

On November 19, 2022, Samsel had another vascular surgery consultation. The clinical director for USP Lewisburg noted that according to that consultation, "they believe that … surgery is not likely to be of further benefit in attempting to restore venous return from either arm." Samsel has also had a plastic surgery consultation; however, USP Lewisburg is still waiting for the results of that consultation.

With respect to claims that Samsel is in pain, USP Lewisburg's clinical director has recently advised that Samsel has a congenital deformity which manifested when he was approximately 12 years old. Physical therapy will be able to determine which positions cause the

most symptoms and teach him to avoid those positions.  Since Samsel has had this condition since the age of 12, the clinical director advises that life experience will have taught Samsel which positions cause him pain and to avoid them.  The clinical director also advises that  Samsel's "pain complaints are inconsistent.  There are times when he reports pain and times when he is not taking any medication and denies having pain."

USP Lewisburg is continuing to treat and to monitor Samsel's health, providing care which its medical staff asses to be in his best interests.  In the above-captioned motion, however, the defense asks this Court to intercede in the routine administration of Samsel's treatment and to substitute its judgment for experienced medical personnel who are evaluating the best approaches to Samsel's care on a continuing basis.  The demand for a court-order is ill advised[1] and made without any relevant supporting authority.

The motion also seeks to postpone the March 6, 2023 trial date scheduled for this five-defendant case because of defense speculations about what care Samsel requires and when it will occur.  Unsupported, speculative conclusions about Samsel's care do not provide the compelling basis that justifies postponing a criminal trial.  Accordingly, and as explained below, this Court should deny Samsel's motion.

LEGAL ANALYSIS

The Bureau of Prisons and the United States Marshals Service are not  parties in this case. *United States v. Cote*, No. No. 219CR134FTM38NPM, 2020 WL 4339351 at *2 (M.D. Fla. July 28, 2020) ("The only parties to this criminal action are the Government and the Defendant" and not the USMS or its designee holding the defendant in custody); *United States v. Luong*, No. CR

---

[1] The United States will offer exhibits under seal reflecting the risks and concerns with pursuing specific procedures.

99-433 WBS GGH, 2009 WL 2851111 at *2 (E.D. Cal. Sept. 2, 2009) ("the only parties to this criminal proceeding are the United States and the defendants"); *United States v. Suarez*, No. 03-20085-01-JWL, 2007 WL 315860, at *1 (D. Kan. Jan. 31, 2007) (Bureau of prisons was not a party in defendant's underlying criminal case or his Section 2255 petition); *United States v. Roueche*, No. CR07-344RSL, 2009 WL 3185517, at *1 (W.D. Wash. Sept. 30, 2009) (noting prior to defendant's sentencing that "the BOP is not a party in this case"); *United States v. Cornejo*, No. CR 94-0206 SBA, 2013 WL 3052913, at *2 (N.D. Cal. June 17, 2013) (motion that sought relief directed to the BOP was improper; the BOP was not and never had been a party to the action); *United States v. Searcy,* No. 5:15-HC-2292-FL, 2018 WL 4259235, at *3–4, n.5 (E.D.N.C. Sept. 6, 2018) (BOP officials were not parties to defendant's case) *United States v. Walia*, No. 14-CR-213 MKB, 2014 WL 3734522, at *16, n.12 (E.D.N.Y. July 25, 2014) (BOP was not a party in the defendant's criminal case). *See generally Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) (a separate civil action under Section 1983 is the proper way to challenge conditions of confinement). Similarly, current or as yet unidentified private, outside health-care providers are not parties.

Here, the defendant seeks an order directed to non-parties outside of the District of Columbia compelling certain conduct involving records that are not within the possession of this Court.  Although counsel for Samsel have been directed to seek relief through filings that provide factual support and legal authority, the pending motion here provides no authority suggesting that compulsion of non-parties has a basis in law or is appropriate.  *See Luong*, 2009 WL 2851111 at *2 (entertaining the defendant's filings in the criminal case fails to properly apprise individuals who have the requisite authority and ability to address and potentially remedy the defendant's grievances"); *Cornejo*, 2013 WL 3052913, at *2 (motion was improper because it was directed to the BOP which was not a party); *Cote*, 2020 WL 4339351 at *2 (entertaining motion involving

USMS and county sheriff who were not parties in criminal case "would implicate serious due process concerns for them"); *Searcy*, 2018 WL 4259235, at *3–4, n.5 (BOP officials were not parties and could not be sanctioned); *Staples v. United States*, No. CIV-16-711-D, 2018 WL 1363049, at *2 (W.D. Okla. Mar. 16, 2018) (questioning court's authority to order BOP or Department of Justice to do anything in connection with *Bivens* action when they were not parties), *aff'd*, 762 F. App'x 525 (10th Cir. 2019); *compare United States v. Polishan*, 19 F.Supp.2d 327, 333 (M.D. Pa. 1998)(court lacked jurisdiction to order third party with alleged obligation to pay defendant's legal fees to fund defense of criminal prosecution).  In the absence of any supporting authority from the defense, this Court should decline to take action other decisions have described as improper, violative of due process, questionable, and beyond the court's jurisdiction.

The motion seeking to compel production of records between the BOP and providers is also factually insufficient.  Exhibit A from the defendant's motion does contain a record from the defendant's outside vascular consultation stating that "very little documentation" at the time of the consultation was available; however, neither Exhibit A nor the motion demonstrate that any absent documentation was available from the BOP at the time of the consultation, producible[2], or essential.  Neither the motion nor the attached records demonstrate that conclusions from the consultation would have differed if additional records were available, or that the defendant has suffered any actual harm from the absence of any records.

The results of the vascular consultation were reviewed by USP Lewisburg's clinical director, who has substantially more records than the consulting vascular surgeon.  The motion does not explain why the clinical director's review, informed by the records possessed by

---

[2] For certain medical records not generated by the BOP, its medical staff must also consider the Health Insurance Portability and Accountability Act of 1996 (HIPAA) when deciding whether to disclose them.

Lewisburg, is insufficient or inappropriate. The motion fails to establish a problem that requires a remedy, let alone a remedy that must come from this Court in a criminal case.[3]

The motion does not allege that USP Lewisburg's practices are divorced from any legitimate governmental interest. Accordingly, it fails to show that the institution's practices for managing medical records are any concern of a federal court. To the contrary:

> with regard to the everyday administration of pretrial detention facilities, the Court is merely concerned with whether a "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective"; if so, the detention facilities practice does not violate due process and thus should generally not concern the court.

*United States v. Medina*, 628 F.Supp.2d 52, 55 (D.D.C. 2009). With respect to the routine administration and transmission of medical records, the motion gives this Court no reason to "displace Mr. Samsel's custodians' or related medical professionals' judgment," ECF 187, and micromanage their production of records to an outside medical facility.

The motion also demands an order directing "the United States Marshals Service and/or the BOP and/or the government to provide medical treatment and medication to include any anti-coagulation therapy and any pain medication recommended by outside providers the government has chosen to take Mr. Samsel to." ECF 229. There is no legal basis for the provision of such an order in a criminal case. While this Court should not ignore the absence of authority for the relief the defense demands, the order requested is also ill-advised (as reflected in the separate

---

[3] In March, 2022, when Samsel arrived at Lewisburg, its clinical director asked Samsel to contact his counsel in order for counsel to provide his medical records. There is no indication that this occurred. When Samsel was transferred to the FDC, he was asked again to contact his counsel so past medical records could be provided. Again, there is no indication that any records were received from defense counsel. The United States proposed and received an order from this Court for counsel to produce the defendant's medical records to the prosecution, and the prosecution transmitted those records and others to USP Lewisburg. The defense has the ability to obtain waivers from the defendant and request records; inaction in response to BOP's requests undermines the urgency of the defendant's current claims.

attachments submitted for the this motion) and factually unsupported.

The defense has provided no records requiring anti-coagulation therapy, and offers no more than a record allowing for the possibility that lifetime anti-coagulation therapy "may" be required. USP Lewisburg has acknowledged the "possible" need for lifetime anti-coagulation, and is resolving that question by seeking a hematology consultation and further recommendations.  The defendant's own exhibit (Exhibit B at pages 2-4) documents USP Lewisburg's initiation of an appropriate consultation.  Any order for provision of care is premature and may cause more harm than good.  Additionally, whether or not anti-coagulation therapy proves to be appropriate, in this instance, USP Lewisburg is acting consistently with the vascular consultation.  The defendant's own motion and exhibit fail to identify an actual dispute.  Thus, there is no ongoing injury to remedy particularly in the context of this criminal case.  *See generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (explaining that Article III standing requires that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'") (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

According to the defendant's Exhibit A, his records and his reporting reflect a history of pain (since 2015) but also document that he is not currently taking any pain medication.  And according to defendant's Exhibit A, the conclusion from his consultation is that Samsel "may" benefit from a specific pain medication, but the consulting provider would defer to Samsel's primary care provider/prison practitioner.  Exhibit A, p. 9.  It makes no sense to order compliance with the recommendation of an outside provider when that recommendation is to defer to the BOP. Nothing in the defendant's motion or exhibits establishes that an order concerning pain medication is necessary.  Sealed exhibits for this motion give reasons why supplying pain medication may not be in the defendant's best interests.

The motion to compel has not identified a lack of care at USP Lewisburg or any issue rising to a level of constitutional concern. Absent such concern, there is no reason for this Court to be involved with the administration of the defendant's health care or to second-guess medical staff at USP Lewisburg. If the defendant has legitimate concerns with his care, he can seek redress administratively within the BOP, or he can file a civil action. As the United States has noted before, a detainee's dispute with decisions about medical care do not trigger review in a criminal case but fall instead within the broad discretion of the detainee's custodian. As one court has explained:

> What medications or treatment a defendant may or may not need are left to the sound discretion of the United States Marshal, who contracts with jail facilities or doctors and other medical personnel to evaluate the needs of each detainee. Just as in the private world, one doctor may believe a patient needs one type of medication while another doctor at another institution may believe a patient needs another medication. A federal court simply lacks jurisdiction in the criminal case to determine what is or is not appropriate care. Instead, federal courts only have civil authority in such matters as provided in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), *Carlson v. Green,* 446 U.S. 14 (1980), and as specified in the Federal Torts Claims Act. See *Petrazzoulo v. U.S. Marshals Service,* 999 F.Supp. 401, 406 (W.D.N.Y.1998). Because the care of a custodial defendant is left to the sound discretion of the Marshal, who is ultimately responsible for defendant's well being, the court takes no role in determining what is or is not the appropriate care.

*United States v. Burgess*, No. 1:09CR17, 2010 WL 2465553, at *3–4 (W.D.N.C. June 14, 2010), *report and recommendation adopted,* No. 1:09-CR-17, 2010 WL 3122634 (W.D.N.C. Aug. 9, 2010); *see also United States v. Andrews*, No. 1:12-cr-100, 2014 WL 1379683 at *3 (N.D. W.Va. Apr. 8, 2014) (pretrial detainee had to seek relief for medical issues and objections to his conditions of confinement in separate civil action) (and cases cited therein); *United States v. Banks*, 422 F. App'x 137, 138 n.1 (3d Cir. 2011) (per curiam) ("We agree with the District Court that a motion filed in his criminal case was not the proper vehicle for raising the claims about prison conditions contained in that motion."); *United States v. Garcia*, 470 F.3d 1001,1003 (10th Cir.

2006) (noting that, because the defendants' "challenge[s] to the conditions of confinement . . . were raised in motions filed in their respective criminal cases . . . they were properly denied by the district court"); *United States v. Wells*, Cr. No. 3:02CR-20-H, 2007 WL 3025082, at *2 (W.D. Ky. Oct. 15, 2007) ("[T]o the extent Wells is challenging his condition of confinement by claiming that his life is in danger, the appropriate course would be to file a civil action against the alleged wrongdoers, not a Rule 60(b) motion in his criminal action."); *United States v. Bencomo-Chacon*, No. CR.A. 07CR00095MSK, 2007 WL 2021850, at *3 (D.Colo. July 11, 2007) ("The Government argues that the Court cannot order that the Defendant receive any particular treatment within this context of this case, and that any claim of inadequate treatment must be made in a civil lawsuit. . . . The Court agrees that a request for provision of particular medical treatment cannot be maintained within the context of a criminal case."); *Luong*, 2009 WL 2852111, at *1 (E.D. Cal. Sept. 2, 2009) ("As several courts have recognized, the proper procedure to redress a defendant's grievances regarding treatment within a jail or prison is to file a civil suit against the relevant parties"); *United States v. Carlos Martin*, 2:18-cr-158-FtM-66NPM, 2020 WL 4504949 at *1 (M.D. Fla. Aug. 5 2020) (to ensure that the persons responsible for the custody and care of the defendant are properly notified and brought before the court, complaints about conditions of confinement that do not concern access to counsel or the ability to prepare a defense must be pursued in a separate civil action) (collecting cases).

Notably, the only authorities Samsel cites are three civil cases seeking relief for conditions of confinement. ECF 229:8. The first clue that his arguments are misplaced may be his failure to cite a single criminal case where the relief he seeks has been granted.

Samsel's motion makes no complaint about access to counsel and the suggestion that he may benefit from pain medication is a far cry from establishing inability to assist in his defense.

His motion contains no affidavits from experts, no examples of how unspecified pain affects the defendant's daily activities or his ability to prepare for trial, and no explanation of how any discomfort he experiences differs from symptoms he has managed for most of his life. Accordingly, his demand for a compulsion order is not a cognizable claim and his motion should be denied.

For the same reasons, Samsel's demand to delay the trial date also fails to establish a sufficient basis for relief. Setting a jury trial is a burdensome task requiring the scheduling of witnesses, lawyers, and jurors at the same place at the same time. Accordingly, once a date has been set it should not be moved unless there is a compelling reason to support a continuance. *See, e.g., Morris v. Slappy*, 461 U.S. 1, 11 (1983). Unsupported, non-specific allegations of pain that may, or may not, benefit from medication hardly provide a compelling reason to delay a trial that is months away.

Information in the motion is also out of date. An alternative reason offered for the continuance was the possibility that Samsel would not receive a plastic surgery consultation until April, 2023. In fact, the plastic surgery consultation has already occurred and USP Lewisburg is waiting to receive records resulting from the consultation.[4] There is no reason to continue a trial

---

[4] The plastic surgery consultation occurred after the pending motion was filed; thus, any inaccuracy about the timing of the consultation is excusable. That is not the same for other statements in the motion. For example, counsel claims she recently received a November 21 medical record from an outside provider on December 2, 2022, misleadingly stating that it took "several back and forth email communications with government counsel just to obtain a copy of the … report." ECF 229:5. Counsel fails to explain that she requested records on December 1, 2022 which were not then in the possession of either the prosecution or USP Lewisburg. On December 1, 2022, the prosecution explained it did not have and had no ability to directly request or obtain records from an outside provider. By December 2, 2022, records from the outside provider were transmitted to USP Lewisburg, forwarded to the prosecution, and provided to counsel. The motion also complains that the USMS does not provide advance notice of Samsel's transportation to medical appointments under the "guise" of "security" ECF 229:4 (quotation marks in original). If counsel has evidence that the security concerns of the USMS are a subterfuge, she should produce it.

date to wait for an event that has already occurred, or to continue a trial date based on speculation about whether the defendant needs further medical treatment and what form that treatment might take. Accordingly, the motion to continue should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:      *s/Karen Rochlin*
         Karen Rochlin
         Assistant United States Attorney Detailee
         DC Bar No. 394447
         99 N.E. 4th Street
         Miami, Florida 33132
         (786) 972-9045
         Karen.Rochlin@usdoj.gov