**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Criminal No. 1:21-cr-00537-TJK** |
| **v.** ) | |
| ) | |
| **RYAN SAMSEL,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONTINUANCE OF TRIAL DATE AND ORDER REGARDING MEDICAL TREATMENT

Defendant Ryan Samsel, by and through the undersigned counsel, and pursuant to the Sixth and Eighth Amendment of the United States Constitution respectfully files this Reply Memorandum of Points and Authorities in further support of his Motion at ECF 229, and in Response to the Government's Opposition Memorandum at ECF 232.[1]

Mr. Samsel's Motion seeks an Order directing the government, whether through its agents, or otherwise, to provide *instanter* such medical treatment and medication as are medically necessary, as already documented by providers the government had Mr. Samsel referred to per this court's order, ECF 159, in lieu of a temporary release; and further for the government to ensure relevant medical records in their possession custody and control, including third party medical records of Mr. Samsel, are received by underlined outside providers that the government sent Mr. Samsel to see for consultation and for treatment to get scheduled.

This court back on May 17, 2022 had Ordered in ECF 159, that, within fourteen (14) days of the date of this order, or a longer period for good cause shown, Mr. Samsel shall receive

---

[1] This Reply would have been due January 9, 2022 but after conferring with the government wherein undersigned counsel requested a one-day extension, the government agreed to not oppose said request. If the court deems necessary, undersigned counsel can submit a motion for leave to file this Reply one day out of time.

an independent medical evaluation at a tertiary research center.  ECF 159.  The Court had further

found that, "[i]f the evaluation reveals that Mr. Samsel requires urgent treatment that cannot be

provided while he remains in federal custody, then Mr. Samsel may renew his motion based on

the findings and/or recommendations from the evaluation." *Id.* The court further ordered that,

*"If the evaluation reveals that Mr. Samsel requires urgent treatment that cannot be provided*

*while he remains in federal custody, then Mr. Samsel may renew his motion based on the*

*findings and/or recommendations from the evaluation."*  ECF 161.

    Therefore, if the government continues to be indifferent to Mr. Samsel's documented

medical needs, additional relief needs to be renewed to include treatment that cannot be provided

while he remains in federal custody.   Further, Mr. Samsel seeks to continue his trial date due to

his pressing medical condition and pain, which consumes his attention and makes trial

preparation unfeasible.

## RELEVANT AND UNDISPUTED FACTS

    In the government's response at ECF 232 and accompanying exhibits filed under seal,

there are certain undisputed facts that are highlighted as relevant:

1.  The government included records from Geisinger dated November 18, with a facsimile

    date of Nov. 21, 2022, as part of its Exhibit 2 and Plaintiffs' Exhibit A.

    o  That outside consultation by Geisinger reflects findings to include the
       finding of "*Very Little Documentation Available*" and "No diagnostic
       studies." *Id*. at p. 8.

    o  Geisinger found on physical examination, that Mr. Samsel "has limited
       range of motion of his left arm."

    o  Geisinger referred Mr. Samsel to Physical Therapy to help the Upper
       Extremities symptoms. *Id.*

        ▪  Back on August 17 of 2021, DOJ and USMS approved a referral
           from UVA for Physical Therapy for loss of Range of Motion in the

Left Arm, which to date remains outstanding and never followed up on.
(Pl. Ex D, attached hereto, under seal).

- "Dr. Edinger has not ordered physical therapy for Mr. Samsel and argues in a recent memorandum not previously provided to undersigned counsel that *"all the physical therapy in the world is not going to alter the structure of the neurological and vascular impingement that he is experiencing…"* (Government Ex. 1 at p. 1. Memorandum dated December 27, 2022).

- Simultaneously Dr. Edinger requests all records from age 12 forward. (*Id*. at p. 2).

o Geisinger further referred him for a Hematology/ Oncology workup. (Pl.' Ex. A at p. 8 of 10, Gov't Ex. 2)

o Dr. Edinger on 11/21/22 acknowledged the possible need for lifetime anticoagulation therapy, but currently does not have Mr. Samsel on anticoagulation therapy and instead agrees that it is "prudent to acquire a hematology consult; and will place the request." *Id.*

o There is also a consultation Request under a Bureau of Prisons Health Services request where a PA on 11/18/22 states:

Bilateral chest / neck/arm pain and paresthesia, LUE 7 RUE
Past studies show NTOS (neurogenic thoracic outlet syndrome) and VTOS (vascular thoracic outlet syndrome), no images available;
Given his history of multiple clots, hematology referral placed.
May need lifelong anticoagulation but will defer to hematology.
Recommend PT, referral placed.;
For Pain management, may need Tramadol prn, will defer to PCP with assistance for this;
May also need cervical spine work-up will defer to PCP;
PRN from vascular standpoint.

(See Handwritten notes dated 11/18/22 on BOP Form on the 6th page of Government Ex. 2).

o There is no record that any pain management, such as Tramadol referred to in the Geisinger record to date.

o There is no record of a cervical-spine work up to date.

o There is no record of hematology follow up.

o   There is no record of a excisional biopsy.

o   There is no order for physical therapy despite the referral from Geisinger.

o   There is no record of the plastic surgeon's having records necessary for the April consult.

o   There is no anticoagulation therapy being provided to Mr. Samsel, not even aspirin.

o   There is no neurological work up despite references to both Neurologic Thoracic Outlet Syndrome and Vascular Thoracic Outlet Syndrome.

o   Instead the government attached a record dated **October 18, 2022** that notes without the signature of Mr. Samsel- that he allegedly refused tests and/or "blood draw." (Government Ex. 3). These pre-date the referral for a hematology work up.

▪   The government also attaches as part of Exhibit 3 to its Response at ECF 232, a DOJ document **dated July 21, 2022** that a CXR (chest x-ray) was recommended that Mr. Samsel allegedly refused, but is noted as refusing to sign the Refusal. On July 21, 2021, Mr. Samsel was detained at CVRJ. *Id.*

▪   It was shortly thereafter from CVRJ on **August 5, 2021** that Mr. Samsel had an "upper extremity venography and central venography performed at the University of Virginia. (See Ex. E, attached UVA records from 08/05/21).

▪   At that time there is a note in the record of an X-Ray performed pre-visit that undersigned counsel does not have, but that the government would have. *Id.* page 11.

▪   The Diagnosis in the University of Virginia record of August 05, 2021 after the venography was performed documents that:

   Diagnosis:
   *Acute embolism and thrombosis of subclavian vein, bilateral*
   *Chronic embolism and thrombosis of axillary vein, bilateral*
   *Chronic embolism and thrombosis of subclavian vein, bilateral*
   *Phlebitis and thrombophlebitis of other sites.*

   *Id. at p. 67.*

4

- o Geisinger also set forth that "*of utmost import, is that he be evaluated and treated for his beast mass and nipple discharge.*"  *Id.*

- o Geisinger wrote that he is scheduled with Plastic Surgery in April of 2023; and that they sought to get the schedulers to move this appointment up, but were unsuccessful.  *Id.*

- o Dr. Edinger, however, again disagrees and notes in his review that Mr. Samsel*, "has a pending consult with plastic surgery for the gynecomastia.  Because I suspect that the malignancy is not likely, I am not pressing to have plastic surgery see him sooner."...* (Pl.'s Ex. B, or Gov't Ex. 2 at p. 2.).

- o Dr. Edinger states on a review note without physical examination or diagnostic studies:  "as to the concern of malignancy, I doubt that this is the case…It is my contention that much of his breast pain is due to the vascular engorgement in his left chest." (Dr. Edinger's Review Note of 11/21/22, p. of Plaintiffs' Exhibit B and page 1 of the Government's Exhibit 2).

- o Dr. Edinger also claims that despite admittedly not having any biopsy nor having examined the Defendant himself since his report of April 21, 2022. (Ex. F, attached hereto, Dr. Edinger's Memorandum of April 21, 2022).

- o The Geisinger record also shows shingles on Mr. Samsel's back reported as untreated.  (Pl.' Ex. A at p. 8 of 10, Gov't Ex. 2)

- o Dr. Edinger's first report of April 21, 2022, the only report that includes a report of a physical examination of Mr. Samsel, to date, wherein Dr. Edinger noted, "**history of blood clots and Herpes Zoster infection are two signs seen with active malignancies**."  Memorandum at p. 1, April 21, 2022.

Dr. Edinger in the Government's Exhibit 1 requests records for Mr. Samsel going back to the age of 12, and appears to be giving that request as a reason not to provide Mr. Samsel any treatment, or therapy, to date, much less not even access to aspirin as a form of anticoagulation therapy.  Simultaneously, the government argues, "The results of the vascular consultation were reviewed by USP Lewisburg's clinical director, who has substantially more records than the consulting vascular surgeon."  (ECF 232 at p. 6.)  This argument raises two points that Mr. Samsel argued, records that the government possesses, whether it is with USP Lewisburg's

clinical director, Dr. Edinger, the government, needs to be provided to third party consultations the government sets up Mr. Samsel with, as well as to undersigned counsel. (See ECF 159). For example, the government in its Ex. 3 included a one page document from CVRJ from July of 2021, so clearly the government possesses more records than it has shared with any of the outside providers.

The second point is that Mr. Samsel at the outset of this endeavor made an application to this court for temporary release to a custodian, so that he could go back to prior doctors, Dr. Jared Leibman and Dr. Dan DeCotis. In the alternative counsel requested that Mr. Samsel get taken by DOJ to those providers. The entire point of that request for temporary release was to allow Mr. Samsel the chance to treat with his earlier providers who have more of his medical history, instead he remains subject to the indifference of the government.

Firstly, Dr. Edinger who the government cites to and attaches his memorandums, appears to be inconsistent, because he previously opined that a "**history of blood clots and Herpes Zoster infection are two signs seen with active malignancies,**" but now ignores the finding by Geisinger of shingles –(i.e. Herpes Zoster infection) untreated on Mr. Samsel's back. Further documentation produced herein, and possessed by the government, include the findings by the University of Virginia of acute and chronic embolisms (blood clots) on August 5, 2021.

Secondly, Dr. Edinger argues in his December 27, 2022 Memorandum, "One of my questions is why wasn't surgery recommended earlier in his clinical history?" (See Government Ex. 1, p. 3). Undersigned counsel has previously referred to notes obtained regarding Mr. Samsel having been scheduled for a Glandectomy with Dr. Jared Leibman on March 5, 2021 at 8AM at 60 Township Line Rd, Elkins Park, PA 19027, scheduled before his arrest in February of 2021, but not completed due to his arrest. (See Ex. F, attached hereto).

Thirdly, Dr. Edinger opines that he does not believe there is malignancy because there is no evidence of growth.  (Gov't Ex. 1, at p. 3) However, Dr. Edinger also notes in referring back to records from 2020, that Mr. Samsel "reported symptoms of changing engorgement and nipple discharge at that time.  However, his exam **demonstrated 1-2 cm of breast tissue under his areolae..."** (which suggests that Mr. Samsel back in 2020 had inflammation in the pigmented area around the nipple).  *Id*. at p. 2 (emphasis added).

But the Jefferson Hospital records from August of 2022 appear to show growth where Mr. Samsel now has a "10 mm Mass in the right breast," in addition to "gynecomastia," and "an 8 mm intramammary lymph node."  See Ex. C, at p. 4.  The doctor from Jefferson Hospital concluded that "*I think it is reasonable to undergo surgical excision of the breast tissue in the retro--- region bilaterally*." (emphasis added). (See Ex. C, under seal).   That doctor reported on August 08, 2022 that she 'would be scheduling Mr. Samsel for a bilateral breast excisional **biopsy**.' Id. (emphasis added).   To date, there has been no follow up.

Mr. Samsel argued in the Motion ECF 229, it is truly frustrating that a provider on November 21, 2022 documents "*little documentation available*" while Defense counsel possesses a fair amount to include several providers and pages.   However, a history of lack of medical records to include diagnostic studies such as a lack of X-Rays and MRIs and films being provided by the government to counsel since Mr. Samsel's detention, as well as a long record in lack of orders for x-rays and other diagnostics being completed by the USMS in 2021.

The problem with the cases cited by the government arguing that it owes no duty to Mr. Samsel as a criminal defendant, but only if Mr. Samsel sues civilly then a duty arises. Mr. Samsel is a Pre-Trial Defendant, and his trial will be affected by his medical status and need for intervention.  Further, his medical findings are documented by the very providers the

government took him to, with no notice to the undersigned counsel, and with no ability for undersigned counsel to even communicate with those providers.

Moreover, Mr. Samsel is not a BOP Prisoner, but a Pre-Trial Detained defendant. Mr. Samsel remains, pre-trial, presumed innocent, despite the government's best efforts to have kept him in holding cells for 23 and 24 hours a day for long periods of time leading up to his current custody and lack of treatment. Despite a potential disagreement over the risk of a cancerous mass, both Geisinger and Dr. Edinger find the need for follow up care, and document the Defendant's *pain*.

By way of background, in NNRJ and in Philadelphia, despite documented head trauma, and no neurologic work up to date despite Geisinger notes on neurologic thoracic outlet syndrome, Mr. Samsel remained in 24 hour lockdown for long periods of time, without any ability to get outside or any physical movement, and despite an approved Referral for Physical Therapy from UVA in 2021, this court had to get involved just to get him access to counsel. Mr. Samsel has had no control over his medical treatment, so it is disingenuous for the government to lay blame on a lack of additional diagnostic studies on a detained defendant who, in custody, has been beaten on three occasions.

The pain that the doctors agree upon, the shingles / Herpes Zoster infection noted by Dr. Edinger, and Geisinger; the limited range of motion in the left arm extremity noted by Geisinger, previously documented by UVA; referrals for Hematology, Plastic Surgery, Neurologic and Vascular Thoracic Outlet Syndrome; findings by Jefferson Health and Geisinger both further document the objective findings that support the fact that Defendant Samsel is suffering from pain – with no pain management to date, no Tramedol which is a non-opiate, as referred to in the

Geisinger records; and no follow up for a excisional biopsy for a diagnosed mass in his breast with nipple discharge which as Dr. Edinger recognizes, was not present in 2020.

It is unreasonable to now expect that Mr. Samsel can adequately focus on trial preparation, and with his scheduled follow in only April, it is respectfully requested that Mr. Samsel's trial be continued to a time after treatment begins.

## ARGUMENT

The government in citing cases that the BOP is not a party to this action, is disingenuous. It is the United States that Mr. Samsel seeks the Court order relief from.  It is the government that detained Mr. Samsel pre-trial, and the government that controls his placement.  The BOP and the USMS are the government's agents, used by the government as the government deems necessary.  As such constitutional protections, the Sixth and the Eighth Amendments apply.

The government instead cites a few unreported decisions from other jurisdictions to argue that courts have consistently held that an incarcerated individual must bring challenges to his conditions of confinement through a civil action.  (ECF 232 at 9) (citing *U.S. v. Burgess*, No. 1:09-cr-17, 2010 WL 2465553, 2010 U.S. Dist. LEXIS 58885, (W.D. N.C. June 14, 2010)(but that case addressed a convicted *pro se* defendant and the court determined: "defendant does not further elaborate on any mental issues he is facing…") or *United States v. Andrews*, No. 1:12-cr-100, 2014 WL 1379683, 2014 U.S. Dist. LEXIS 47955, *9-10 (N.D. W.Va. April 8, 2014)(convicted defendants and a charge of murder of an inmate failed to expand the conditions) (*citing Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973) (noting that an action under 42 U.S.C. § 1983 "is a proper remedy *for a state prisoner who is making a constitutional challenge to the conditions of his prison life*, *but not to the fact or length of his custody*")(further citations omitted).  These cases are not only distinguishable, but apply to

convicted defendants where the custody is not impacted whereas this defendant cannot prepare

for trial at this time, and the government has not complied with the court's prior orders.

The government also cited *U.S. v. Banks*, 422 F. App'x 137, a case about restitution.  At

footnote 1, the court noted that the convicted defendant (not a pre-trial defendant) did not brief

the issue of the conditions of his confinement on his appeal, therefore, the court noted that was

not the proper vehicle for raising the claims about prison conditions contained in that motion."

*Id*. at 138, n.1.   Again, this motion was about a prisoner's conditions of confinement whereas

Mr. Samsel, a pre-trial defendant, needs immediate medical care that has been recognized by the

very doctors the government has sent Mr. Samsel to see, without any input from undersigned

counsel, or ability to provide records to those doctors.  (See ECF 159).  Nevertheless, the

government's argument is circular because it recognizes that it will have a duty in civil liability

which can be created by the actions of the government and its agents, akin to a failure to mitigate

harm, through, '[d]eliberate indifference is determined by "analyzing whether the municipality

knew or should have known of the risk of constitutional violations" and yet fail[ure] to take

remedial action. *Olaniyi v. District of Columbia*, 763 F. Supp. 2d 70, 98 (citing *Baker*, 326 F.3d

at 1307) (D.D.C. 2011) ("The District of Columbia is constitutionally obligated to provide

inmates with medical care." *Id*. at 96, n.23).  The purpose of such findings by a court is to

educate the government on its fundamental obligations, it does not mean the government has no

obligations when it is a criminal case.  As Mr. Samsel argued, cases the government did not

attempt to distinguish, are applicable,

> In *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), the
> Supreme Court explained that, deliberate indifference to serious medical needs of
> prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed
> by the Eighth Amendment. This is true whether the indifference is manifested by
> prison doctors in their response to the prisoner's needs or by prison guards in
> intentionally denying or delaying access to medical care or intentionally interfering

with the treatment once prescribed. *Id*. at 104-05 (citations and footnotes omitted); see Hudson v. McMillian, 503 U.S. 1, 5-6, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Cox v. District of Columbia*, 834 F. Supp. 439, 441 (D.D.C. 1992) (citations omitted).

*Gasaway v. District of Columbia*, 1996 U.S. Dist. LEXIS 23176, *3 (D.D.C. April 29, 1996) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

Further, Mr. Samsel has requested a continuation of his trial date for the very reason that he cannot focus on the defense of his case, and the preparation required because of the pain he is in, the fear for the lack of treatment and the inability to confer with counsel about the case itself, which clearly also invokes his rights under the Sixth Amendment.

**CONCLUSION**

For these reasons, Defendant Ryan Samsel respectfully requests this Court issue an Order directing the government to ensure that while it detains Mr. Samsel pre-trial, to provide medical treatment and medication, to include anti-coagulation therapy and pain medication as described in the Geisinger records, as well as the excision biopsy described by the Jefferson Hospital records, the referral and treatment by a plastic surgeon referred to by Geisinger who viewed it much more urgent than Dr. Edinger, and a vascular consult as Dr. Edinger focuses on the vascular concerns of Mr. Samsel, which also are present; and medical intervention to include the hematology work-up recommended by outside providers, to be performed by those providers; or release Mr. Samsel temporarily to allow him to obtain the medical intervention he needs.

And again, all medical records in the possession of the government to be produced to any provider that the government has Mr. Samsel taken to; and it is respectfully requested that Mr. Samsel's trial be continued from March 1, 2023, to a time after treatment begins, which can be no earlier based on his current consult date with plastic surgery of April 2023, due to the pain

and the concerns related to treatment needed but not received, which is preventing Mr. Samsel's and counsel's focus on the defense of the case.

[signature next page]

Dated: January 10, 2023                 Respectfully submitted,

                                         _____/s/ Stanley E. Woodward, Jr._____
                                         Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                         BRAND WOODWARD LAW, LP
                                         1808 Park Road NW
                                         Washington, DC 20010
                                         202-996-7447 (telephone)
                                         202-996-0113 (facsimile)
                                         Stanley@BrandWoodwardLaw.com

                                         /s/ Juli Zsuzsa Haller
                                         Juli Z. Haller, (D.C. Bar No.466921)
                                         The Law Offices of Julia Haller
                                         601 Pennsylvania Avenue, N.W., Suite 900
                                         Washington, DC 20004
                                         Telephone: (202) 729-2201
                                         HallerJulia@outlook.com

                                         *Counsel for Defendant Ryan Samsel*

## <u>CERTIFICATE OF SERVICE</u>

On January 10, 2023 the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

*/s/ Juli Zsuzsa Haller*
*Juli Z. Haller, (D.C. Bar No.466921)*
*The Law Offices of Julia Haller*
*601 Pennsylvania Avenue, N.W., Suite 900*
*Washington, DC 20004*
*Telephone: (202) 729-2201*
*HallerJulia@outlook.com*

*Counsel for Defendant Ryan Samsel*