## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Civil Action No. 1:21-cr-00537 (JMC) |
| RYAN SAMSEL, *et al.*, | |
| Defendants. | |

## <u>ORDER</u>

Due to their alleged participation in the events of January 6, 2021, Defendants are charged with violating 18 U.S.C. § 231(a)(3), a statute that prohibits individuals from obstructing law enforcement officers during a civil disorder.[1] Defendants filed a Motion to Dismiss that charge, arguing that the Indictment was insufficient and that the statute was unconstitutionally vague. For the reasons stated below, the Court denies the Motion.

## I.    BACKGROUND

When ruling on a motion to dismiss an indictment, the Court "assumes the truth of [the] factual allegations" included in the indictment. *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015). Here, the Indictment alleges that a joint session of the United States Congress convened at the U.S. Capitol on January 6, 2021, to certify the vote count of the Electoral College of the 2020 presidential election. ECF 1-1 at 1. A large crowd gathered outside the U.S. Capitol during

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

1

the joint session. *Id.* Barricades had been set up around the exterior of the U.S. Capitol building, and U.S. Capitol Police monitored the crowd. *Id.*

Around 1:30 PM, the House and Senate adjourned to separate chambers to resolve an objection. *Id.* About thirty minutes later, the crowd pushed past the barriers, assaulted members of the U.S. Capitol Police, and entered the U.S. Capitol building. *Id.* Members of the House and Senate, as well as Vice President Mike Pence, were evacuated. *Id.* The joint session of Congress was paused until later that night. *Id.*

The Government alleges that the five Defendants in this case—Ryan Samsel, James Tate Grant, Paul Russell Johnson, Stephen Chase Randolph, and Jason Benjamin Blythe—were involved in the events of January 6, 2021. *See* ECF 80 (Third Superseding Indictment). The Defendants allegedly assaulted law enforcement officers with a metal crowd control barrier and impeded the certification of the 2020 election. *See id.* at 2–3.

On October 28, 2022, Randolph filed a Motion to Dismiss Count One of the Indictment, which charged him and his co-defendants with violating 18 U.S.C. § 231(a)(3). ECF 204. Randolph's co-defendants joined his Motion. *See* ECF 208 (Samsel); ECF 211 (Blythe); ECF 212 (Grant); ECF 213 (Johnson).

## II.   LEGAL STANDARD

Before trial, a criminal defendant can move to dismiss an indictment if they believe the indictment is defective due to a lack of specificity or a failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B). Constitutional challenges, such as a void-for-vagueness challenge, fall within the category of defenses that allege an indictment fails to state an offense. *United States v. Eshetu*, 863 F.3d 946, 952 (D.C. Cir. 2017), *vacated on other grounds*, 898 F.3d 36 (D.C. Cir. 2018). However, courts will grant a motion to dismiss "only in unusual circumstances" because it "directly encroaches upon the fundamental role of the grand jury." *Ballestas*, 795 F.3d at 148.

The Sixth Amendment provides that criminal defendants have the right to be "informed of the nature and cause of the accusation" against them in all criminal proceedings. An indictment is meant to fulfill this requirement by giving the defendant notice of their charged offenses. *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001). Federal Rule of Criminal Procedure 7(c)(1) requires indictments to include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment will be deemed sufficient if it meets two requirements: it must "contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend," and it must enable the defendant "to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). An indictment that recasts the statutory language will generally satisfy these requirements, so long as the indictment's text accurately depicts the elements of the offense and is accompanied by enough facts to notify the defendant of the charged conduct. *Id.*

## III.   ANALYSIS

Defendants move to dismiss Count One of the Third Superseding Indictment, which charges Defendants with violating 18 U.S.C. § 231(a)(3). That statute provides:

> "Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function . . . [s]hall be fined under this title or imprisoned not more than five years, or both."

Defendants argue that Count One should be dismissed for two reasons. First, they argue that Count One "lacks specificity and fails to adequately inform" the Defendants of "the nature and cause" of the allegations against them. ECF 204 at 3. Second, they argue that 18 U.S.C. § 231(a)(3) is void for vagueness. *Id.* at 7–11. The Court considers each argument in turn, but ultimately denies both.

### A.  Sufficiency of the Indictment

The Third Superseding Indictment alleges:

"On or about January 6, 2021, within the District of Columbia, Ryan Samsel, James Tate Grant, Paul Russell Johnson, Stephen Chase Randolph, and Jason Benjamin Blythe, along with others known and unknown to the Grand Jury, committed and attempted to commit an act to obstruct, impede, and interfere with law enforcement officers, that is, Officer C.E. and Officer D.C. and other officers from the United States Capitol Police Department, lawfully engaged in the lawful performance of their official duties incident to and during the commission of a civil disorder, which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function."

The text of the Indictment closely parallels the statutory language, but that similarity does not suggest a defect. *See Hamling*, 418 U.S. at 117. The Indictment alleges all the elements of § 231(a)(3) without ambiguity.

Defendants' argument focuses on the factual assertions supporting those elements. They claim that the Indictment does not include enough factual assertions to apprise them of the nature of the pending accusations, and they specifically argue that the Indictment does not identify a particular "civil disorder." ECF 204 at 6–7. Defendants are right that certain crimes "must be charged with greater specificity": where the criminality of conduct turns upon the "specific identification of a fact," an indictment must include greater factual specificity to give defendants notice of which action allegedly violated the law. *United States v. Resendiz-Ponce*, 549 U.S. 102, 109–10 (2007). *Russell v. United States*, a case highlighted by Defendants, is a perfect example. There, six defendants were convicted under 2 U.S.C. § 192 for refusing to answer questions before a congressional subcommittee. 369 U.S. 749, 751–52 (1962). Their indictments did not identify which questions the defendants refused to answer; the indictments said only that the questions "were pertinent to the question then under inquiry" by the subcommittee. *Id.* at 752. But witnesses before a subcommittee can lawfully refuse to answer certain questions. They may, for example,

refuse to answer questions not pertinent to the subject of the inquiry. *Id.* at 755. Because the subject matter of the unanswered questions was an essential part of the prosecution—the defendants' culpability hinged on whether the questions were pertinent to the subject of the inquiry—the indictment needed to identify the subject under inquiry to inform the defendants of the charges against them. *Id.* at 764–66. Otherwise, the government could shift its theory of criminality at each stage of the case and "take advantage of each passing vicissitude of the trial and appeal." *Id.* at 768.

The Indictment in this case does not suffer from the same deficiency because the "core of criminality" under § 231(a)(3) does not depend upon specific factual allegations in the same way that the charges in *Russell* did. *Id.* at 764. Defendants argue that the government must clarify which "civil disorder" is referenced by the Indictment, ECF 204 at 6, but the statute prohibits individuals from interfering with law enforcement officials during *any* civil disorder (so long as it meets the statutory definition of "civil disorder," *see* 18 U.S.C. § 232(1)). Because there are not certain civil disorders that could lawfully be obstructed like there were certain questions that the *Russell* defendants could lawfully refuse to answer, the Indictment does not need to name a specific civil disorder. *See United States v. Williams*, 2022 WL 2237301, at *7–8 (D.D.C. 2022) (denying a challenge to a similar indictment related to the events of January 6); *United States v. Sargent*, 2022 WL 1124817, at *3–6 (D.D.C. 2022) (same).

Additionally, the Indictment is not "devoid of any factual assertions" as Defendants claim. ECF 204 at 7. It states the date of the charged conduct ("[o]n or about January 6, 2021"), the branch of law enforcement involved ("United States Capitol Police Department"), and the specific officers who were affected ("Officer C.E. and Officer D.C."). ECF 80 at 2. By mirroring the statutory language and specifying the date of the offense and the identity of the officers, the Indictment

adequately informed Defendants about the charges against them, allowing them to prepare their defense and protect their double-jeopardy rights. *United States v. Williamson*, 903 F.3d 124, 130–31 (D.C. Cir. 2018); *Resendiz-Ponce*, 549 U.S. at 109 ("an indictment parroting the language of a federal criminal statute is often sufficient").

## B. Vagueness

A criminal statute violates the due process clause if it "fails to give ordinary people fair notice of the conduct it punishes," or if its language is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Defendants advance a few arguments explaining why they believe § 231(a)(3) is unconstitutionally vague. The Court considers each in turn but concludes that the statute is sufficiently definite to satisfy the Constitution's constraints.

### 1. Scienter Requirement

Defendants argue that § 231(a)(3) lacks a mens rea requirement, the absence of which obfuscates the statute's terms and creates room for arbitrary enforcement by police, prosecutors, and judges. ECF 204 at 9. While it is true that § 231(a)(3) does not expressly state a required mental state, the mens rea canon instructs that the elements of a criminal statute should generally be interpreted as containing an implied scienter requirement to "separate wrongful conduct from otherwise innocent conduct." *Elonis v. United States*, 575 U.S. 723, 734–36 (2015); *see also Ruan v. United States*, 142 S. Ct. 2370, 2383 (2022) (Alito, J., concurring) (calling this principle of statutory interpretation the "mens rea canon").

With this principle of statutory interpretation in mind, § 231(a)(3) is most naturally read to prohibit "only acts performed with the intent to obstruct, impede, or interfere with the law enforcement officer." *United States v. McHugh*, 583 F. Supp. 3d 1, 25 (D.D.C. 2022). The infinitive phrase "to obstruct, impede, or interfere" is included in the statute to demarcate lawful

conduct from unlawful conduct: not all actions performed around law enforcement officers during a civil disorder are illegal; only those performed *to* obstruct, impede, or interfere with law enforcement officers are proscribed.

Defendants contend that the statute could be interpreted to require a knowledge mens rea. *See* ECF 204 at 9. But that interpretation is "unnatural at best." *McHugh*, 583 F. Supp. 3d at 25. For the statute to be read that way, unwritten words would have to be substituted for "to." Instead of proscribing acts committed *to* obstruct, impede, or interfere with law enforcement officers, the statute would have to be interpreted as criminalizing actions that defendants *know will* obstruct, impede, or interfere with law enforcement officers. The statute is much more easily read by giving full meaning to the infinitive phrase and inferring an implied intent mens rea. The Court therefore agrees with other courts that have considered the issue and concludes that § 231(a)(3) requires defendants to have acted intentionally. *See Williams*, 2022 WL 2237301, at *7; *United States v. Fischer*, 2022 WL 782413, at *3 (D.D.C. Mar. 15, 2022); *McHugh*, 583 F. Supp. 3d at 25. With the implied scienter established, the Court also holds that there is not an unconstitutional risk of arbitrary enforcement.

## 2. *Ambiguous Phrases*

Defendants argue that certain phrases in § 231(a)(3) are too indefinite to apprise individuals of what conduct is prohibited. They first target "any act to obstruct, impede, or interfere." ECF 204 at 8, 10. But any concerns about the vagueness of this phrase are mitigated by its implied scienter requirement: as noted earlier, the statute criminalizes only those actions taken with the intent to obstruct, impede, or interfere with law enforcement officers. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982) (recognizing that "a scienter requirement may mitigate a law's vagueness").

Defendants next take aim at the phrase "civil disorder," arguing that this phrase could apply "to virtually any tumultuous or rowdy public gathering to which police might be called." ECF 204 at 8–9. Presumably, Defendants fear that the ambiguity of this term could lead to arbitrary enforcement. Vague terms can render a statute unconstitutional if they lack any statutory definitions or other narrowing context, leaving it unclear which facts need to be established to prove guilt. *United States v. Williams*, 553 U.S. 285, 306 (2008). Here, any fuzzy edges surrounding the phrase "civil disorder" are sharpened by its statutory definition, which defines "civil disorder" to be "assemblages of three or more persons" that cause "an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1). The statutory definition clarifies that the phrase covers only a small, identifiable subset of public gatherings, and resolves any confusion the phrase might have caused about which conduct § 231(a)(3) prohibits.

The Court determines that a person of ordinary intelligence would understand what conduct is prohibited by § 231(a)(3). The statute informs individuals of which law enforcement officers and civil disorders may not be obstructed, and it includes enough context to protect against arbitrary enforcement. This Court therefore agrees with other courts that have considered the issue in the context of the events on January 6 and concludes that 18 U.S.C. § 231(a)(3) is not void for vagueness. *See Williams*, 2022 WL 2237301, at *2–5; *Fischer*, 2022 WL 782413, at *2–3; *McHugh*, 583 F. Supp. 3d at 24–28; *United States v. Nordean*, 579 F. Supp. 3d 28, 57 (D.D.C. 2021).

### 3.  Overbreadth

Defendants also included some arguments sounding in overbreadth in their motion. *See, e.g.*, ECF 204 at 10. Because the two arguments are distinct, *see Hastings v. Jud. Conf. of the U.S.*, 829 F.2d 91, 105 (D.C. Cir. 1987), the Court considers them separately.

A statute is overbroad, and therefore facially invalid, if it "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003). A statute will not be declared unconstitutional if defendants conceive of only a few impermissible applications of the statute. *See Members of the City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). That is especially true if the statute regulates something other than "pure speech": an overbreadth challenge will "rarely . . . succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech." *Hicks*, 539 U.S. at 124.

Section 231(a)(3) prohibits "act[s] to obstruct, impede, or interfere" with law enforcement officers during a civil disorder. By proscribing "act[s]," the statutory language aims to curtail misconduct, not speech. Although it is possible that speech could be connected to the proscribed conduct, those instances would be rare as compared against the number of lawful applications to conduct-only transgressions.

The statute also contains several limitations that prevent it from sweeping too broadly. Section 231(a)(3) prohibits only actions intended "to obstruct, impede, or interfere" with firemen or law enforcement officers performing their "official duties" incident to a "civil disorder." The interference must also "obstruct, delay, or adversely affect commerce." 18 U.S.C. § 231(a)(3). The misbehavior targeted by the statute falls within the category of "harmful, constitutionally unprotected conduct" that Congress maintains a "legitimate state interest[]" in proscribing. *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Even if it is theoretically possible for § 231(a)(3) to restrain some speech incidentally to its conduct-based restrictions, those examples are vastly outnumbered by the statute's lawful applications. Because the law does not sweep in an excessive amount of constitutionally protected speech, it is not overbroad. The Court denies

Defendants' Motion, joining many other courts that have rejected similar overbreadth arguments. *See Williams*, 2022 WL 2237301, at *6; *Fischer*, 2022 WL 782413, at *3–4; *McHugh*, 583 F. Supp. 3d at 28–29; *Nordean*, 579 F. Supp. 3d at 57–58; *United States v. Mostofsky*, 579 F. Supp. 3d 9, 22–24 (D.D.C. 2021).

## IV.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** that Defendants' Motion to Dismiss Count One, ECF 204, is **DENIED**.

> **SO ORDERED.**

DATE: January 13, 2023

_____
Jia M. Cobb
U.S. District Court Judge