**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No.: 1:21-cr-00537-JMC** |
| **v.** | : | |
| | : | |
| **RYAN SAMSEL,** | : | |
| **JAMES TATE GRANT,** | : | |
| **PAUL RUSSELL JOHNSON,** | : | |
| **STEPHEN CHASE RANDOLPH, and** | : | |
| **JASON BENJAMIN BLYTHE,** | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES' RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF IN RESPONSE TO *UNITED STATES v. FISCHER*

Defendant Samsel submitted his Supplemental Brief addressing the D.C. Circuit's recent decision in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). ECF 259. He argues that *Fischer* created a definition of "corruptly" that requires proof that defendant "sought to secure an unlawful benefit" to support a conviction under 18 U.S.C. 1512(c)(2). It does not. In *Fischer*, the D.C. Circuit reversed orders dismissing the Section 1512(c)(2) charges in several cases, holding that Section 1512(c)(2) "encompasses all forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election." *Id.* at 335. With that result, it is hard to see how *Fischer*—a case in which the government successfully challenged the dismissal Section 1512(c)(2) charges at the pleading stage—in any way supports defendant's argument. Specifically, *Fischer* does not supply a binding interpretation of "corruptly" for two reasons. First, the interpretation of "corruptly" was neither squarely presented nor authoritatively resolved in *Fischer*. Second, even if this Court were to apply the rule announced in *United States v. Marks*, 430 U.S. 188, 193 (1977), and clarified in *King v. Palmer*,

1

950 F.2d 771, 781 (D.C. Cir. 1991) (en banc), to the panel opinions in *Fischer*, no interpretation of "corruptly" emerged as a "common denominator of the Court's reasoning."   *King*, 950 F.2d at 781.   Hence, *Fischer* did not change the definition and does not support the defendant's argument.

## I.   Background

On January 6, 2021, Vice President Pence and his immediate family members, all under United States Secret Service ("USSS") protection, were present at the United States Capitol building. The United States Capitol Police ("USCP"), with authority over security on the Capitol grounds, set up security barriers on key entrance and exit points. On the west side of the Capitol, USCP set up metal bike rack barriers along First Street. Within the West Front of the Capitol building, USCP set up additional temporary metal barriers, green snow fencing, and signage stating, "Area Closed By order of the United States Capitol Police Board." The Lower West Terrace on the West Front was closed to members of the public.

At approximately 12:45 p.m., defendant Samsel and co-defendants James Tate Grant, Paul Russell Johnson, Stephen Chase Randolph, and Jason Benjamin Blythe formed a group with other rioters gathered at the Peace Circle, on the northwest side of the Capitol grounds.   Defendants moved past the first line of barricades, toward a second line that was guarded by several USCP officers.   They threatened and verbally assaulted the officers.   Then they attacked.   They lifted the metal barricades and drove them into the USCP officers.   The force knocked Officer C.E. to the ground, and she suffered a concussion. Defendants also attacked USCP Officer D.C.   D.C. fell, and other officers had to rescue him.   Samsel and his codefendants breached the police line and charged over the metal barricade.   Samsel and others forced law enforcement officers to fall back from the attack and the rush of rioters who then charged on the Capitol.

Samsel and his co-defendants opened the initial breach on January 6. Their attack at the Peace Circle unleashed rioters and insurrectionists and hours of terror and violence against the Capitol and Capitol Police, but they did not stop. After the initial breach, Samsel and his co-defendants continued the attack against barriers and police officers, including an incident in which Samsel physically grabbed the riot shield of a law enforcement officer while rioters were attempting to overtake police and penetrate into the Capitol building. Samsel also tore through the tarp in the scaffolding on the Capitol grounds and hurled a wooden plank at officers as they struggled to protect Congress from thousands of rioters who succeeded in shutting down the seat of government on January 6.

## II.    Relevant Procedural History

Samsel was arrested in Pennsylvania on January 30, 2021 for the crimes he committed on January 6, 2021. ECF 6. The grand jury returned indictments against him on August 25, 2021, November 17, 2021, December 15, 2021, and January 13, 2022. ECF 46, 61, 69, and 80. On October 28, 2022, the defendants moved and joined in motions to dismiss counts One, Five, Six, Seven and Ten of the Third Superseding Indictment. ECF 202, 204, 205, 207-11, 212, 213. In ECF 208, Samsel moved to dismiss Count Ten and stated his intent to join codefendant Randolph's motion, ECF 204, seeking dismissal of Count One, which charged the offense of civil disorder in violation of 18 U.S.C. § 231. In his motion to dismiss Count Ten, ECF 208 at 6, 10, 11, 19, 20, 23, Samsel relied on the Honorable Carl J. Nichols' ruling in *United States v. Miller*, 589 F. Supp.3d 60 (D.D.C. 2022), dismissing a count charging Section 1512(c)(2) because it did not allege obstruction related to a document, record, or tangible object.

On February 15, 2023, Samsel and the four co-defendants were charged in a Fourth

3

Superseding Indictment, ECF 245, with multiple crimes arising from their participation in the

January 6, 2021, attack on law enforcement officers and the United States Capitol.   As relevant

here, Count Ten of the Fourth Superseding Indictment charges:

> On or about January 6, 2021, within the District of Columbia and elsewhere, **RYAN SAMSEL, JAMES TATE GRANT, PAUL RUSSELL JOHNSON, STEPHEN CHASE RANDOLPH,** and **JASON BENJAMIN BLYTHE**, along with others known and unknown to the grand jury, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.
>
> (**Obstruction of an Official Proceeding and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2)

*Id.* at 7.[1]

While Samsel's motion to dismiss Count Ten was pending, the United States was

pursuing interlocutory appeals from Judge Nichols' dismissal in *Miller* and his dismissals

of Section 1512(c)(2) counts in two other cases arising from the January 6, 2021 attack on

the Capitol, *United States v. Fischer*, 21-cr-234 (CJN) and *United States v. Lang*, 21-cr-53

(CJN).   All three appeals were consolidated under *Fischer*, which overturned the district

court's dismissals.

The *per curiam* judgment in *Fischer* stated that the district court's orders are

"reversed and the cases [are] remanded for further proceedings, in accordance *with the*

*opinion of the court*[.]"   Judgment (Apr. 7, 2023) (emphasis added)(attached).   A notation

at the bottom of the judgment further clarified that Judge Pan filed the "[o]pinion for the

---

[1] Count Ten of the Fourth Superseding Indictment used the same language as Count Ten of the Third Superseding Indictment, which was pending at the time the motions to dismiss were filed.

court" and that Judge Walker joined that opinion "except as to Section 1.C.1 and footnote 8."

On April 7, 2023, this Court ordered that "the parties may (but are not required to) submit supplemental briefing explaining the impact that *United States v. Fischer* 2023 WL 2817988 (D.C. Cir. 2023) has on the pending motions in this case."   April 7, 2023 Minute Order.   On April 11, 2023, the Court set a deadline of May 8, 2023 for supplemental briefs from parties choosing to file them, with responsive briefs due by May 15, 2023.   April 11, 2023 Minute Order.

Samsel has now filed a supplemental brief addressing *Fischer*.   In that filing, he asks this Court to follow the portion of Judge Walker's concurrence where he did not join "the opinion of the court."   Instead, Samsel asserts that this Court should resolve his motion to dismiss based on a definition of the term "corruptly" which was not part of the question presented to the court of appeals; which the majority opinion does not require; and which the dissenting opinion did not join.   Samsel's reasoning is unpersuasive, and for the reasons below, this Court should reject Samsel's contentions and deny his motion to dismiss.[2]

### III.      Argument

### a.      The Indictment Sufficiently Alleges a Violation of Section 1512(c)(2).

Defendant's Supplemental Brief does not support a motion to dismiss or any other relief, because the Fourth Superseding Indictment in this case sufficiently alleges a violation of Section 1512(c)(2).   The D.C. Circuit's recent opinion in *Fischer* confirms that.

---

[2] In his supplemental brief, Samsel states that "on January 13, 2023, the court denied the defendants' motion to dismiss."   ECF 259 at 1.   In fact, this Court has denied motions to dismiss Count One, which alleges a violation of 18 U.S.C. § 231.   ECF 240.   Samsel's motion to dismiss Count Ten remains pending.

An indictment's "main purpose is 'to inform the defendant of the nature of the accusation against him.'" *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001) (quoting *Russell v. United States*, 369 U.S. 749, 767 (1962)). Thus, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Given these limited requirements, it is "generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Id.* (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).

The grand jury charged all of the defendants in Count Ten with violating Section 1512(c)(2), which makes it a crime to "corruptly . . . obstruct[ ], influence[ ], or impede[ ] any official proceeding, or attempt[ ] to do so[.]" The term "official proceeding" means, among other things, "a proceeding before the Congress[.]" 18 U.S.C. § 1515(a)(1)(B). Tracking this statutory language, the superseding indictment alleges:

> On or about January 6, 2021, within the District of Columbia and elsewhere, **RYAN SAMSEL, JAMES TATE GRANT, PAUL RUSSELL JOHNSON, STEPHEN CHASE RANDOLPH,** and **JASON BENJAMIN BLYTHE**, along with others known and unknown to the grand jury, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

ECF No. 245 at 7. This charge properly (1) contained the elements of the offense, (2) fairly informed Samsel of the charge against which he was required to defend, and (3) provided sufficient information to protect him from future prosecutions for the same offense. Nothing more is

required. *See, e.g., United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.' . . . Rather, to be sufficient, an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense.") (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).

Rather than helping Samsel, *Fischer* confirms the sufficiency of the Fourth Superseding Indictment in this case and, specifically, the charge as set forth in Count Ten.   In *Fischer*, the D.C. Circuit addressed pretrial rulings that Section 1512(c)(2) "'requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding.'" 64 F.4th at 334 (quoting *United States v. Miller*, 589 F. Supp. 3d 60, 78 (D.D.C. 2022)).   Because the indictments in the cases on appeal did not allege that those defendants "violated § 1512(c)(2) by committing obstructive acts related to 'a document, record, or other object,' the district court dismissed the § 1512(c)(2) counts." *Id.*   The government appealed and the D.C. Circuit reversed, holding Section 1512(c)(2) "encompasses all forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election." *Id.* at 335.   The court concluded that, "[u]nder the most natural reading of the statute, § 1512(c)(2) applies to all forms of corrupt obstruction of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)." *Id.* at 336. The D.C. Circuit's opinion in *Fischer* thus confirms that the indictment in this case is sufficient notwithstanding the fact that it does not allege obstructive acts related to a document, record, or other object.

      b.     **_Fischer_ does not authoritatively construe the meaning of "corruptly" in 18 U.S.C. § 1512(c)(2)**

The Court in *Fischer* did not pronounce an authoritative holding on the meaning of

"corruptly" in Section 1512(c)(2).   The district court's dismissal of the Section 1512 count in the cases consolidated on appeal was based on the district court's view that the *actus reus* of the offense required a nexus to documents, not any concern about the statute's *mens rea* element. Accordingly, the definition of "corruptly" was not extensively briefed by the parties, nor was it squarely presented on appeal.   The court therefore had no cause to resolve the issue. Additionally, the sole concurring opinion in *Fischer* that sought to define "corruptly" did not command sufficient support to render that definition a holding of the court.

### 1. *Fischer* did not decide how to interpret "corruptly" in Section 1512(c)(2)

The panel in *Fischer* produced three opinions.   In the portions of the lead opinion (Pan, J.) joined in full by the concurring judge (Walker, J.), *Fischer* relied on Section 1512(c)(2)'s text and structure as well as case law interpreting the statute, *see id.* at 335-39, to conclude that Section 1512(c)(2) "encompasses all forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election."   *Id.* at 335.   In a section of the lead opinion that Judge Walker did not join, Judge Pan reasoned that "[t]he requirement of 'corrupt' intent prevents [Section] 1512(c)(2) from sweeping up a great deal of conduct that has nothing to do with obstruction," but refrained from defining "the exact contours of 'corrupt' intent" because "the task of defining 'corruptly'" was not before the Court.   *Id.* at 340 (opinion of Pan, J.).   Judge Walker, believing that defining "corruptly" was necessary to "make sense" of "Section 1512](c)(2)'s act element," wrote a concurring opinion in which he proposed defining the term to mean to "act with an intent to procure an unlawful benefit either for oneself or for some other person."   *Id.* at 352 (Walker, J., concurring) (citation omitted).   The dissenting opinion (Katsas, J.) criticized the concurrence's definition of "corruptly" because it "required transplanting" into

Section 1512(c)(2) an interpretation "that appears to have been used so far only in tax law," but did not endorse any other definition of the term. *Id.* at 381 (Katsas, J., dissenting).

As explained in both the lead (Pan, J.) and dissenting (Katsas, J.) opinions in *Fischer*, the definition of "corruptly" was not squarely presented and, therefore, was not resolved. *See id.* at 340-41 (opinion of Pan, J.) ("expressing [no] preference for any particular definition of 'corruptly'" because "the allegations against appellees appear to be sufficient to meet any proposed definition of 'corrupt' intent"); *id.* at 341 (noting that the dissent also "declines to settle on a precise meaning of 'corruptly' at this time" and thus "share[s] much common ground" with the lead opinion "on the issue of *mens rea*"); *id.* at 379-*81 (Katsas, J., dissenting) (surveying possible definitions of "corruptly" but declining to adopt any particular one). Although the concurrence would have determined that "corruptly" means "a criminal intent to procure an unlawful benefit," *id.* at 352 (Walker, J., concurring), the resolution of that *mens rea* issue was not necessary to the court's holding concerning the *actus reus* of the offense—which Judge Walker joined by concurring in all but a section and a footnote in the lead opinion and concurring in the judgment— and his views on the meaning of "corruptly" were not adopted by the other judges on the panel.

Reading *Fischer* to have left unresolved the definition of "corruptly" in Section 1512(c)(2) is consistent with how the case was litigated. Although Miller had argued in the district court that Section 1512(c)(2)'s *mens rea* requirement was unconstitutionally vague, *see United States v. Miller*, 589 F. Supp. 3d 60, 65 (D.D.C. 2022), the district court did not address that argument and specifically declined to interpret "corruptly" when adjudicating the government's reconsideration motion, *see United States v. Miller*, 605 F. Supp. 3d 63, 70 n.3 (D.D.C. 2022).[3]  The question

_____

[3] Lang's motion to dismiss the Section 1512 count in his indictment never addressed the statute's

presented in *Fischer* concerned Section 1512(c)(2)'s *actus reus* requirement, *see* Brief for the

United States, *United States v. Fischer*, No. 22-3038, at 2-3 (whether Section 1512(c)(2) covers

the defendants' "alleged conduct"), and the government's opening 68-page brief devoted only

three pages to addressing "corruptly" when discussing limitations on the statute's reach.   *See*

*Fischer*, 64 F.4th at 340 (opinion of Pan, J.) (noting that the parties addressed "corruptly" "only

peripherally" in the briefs).   With respect to defining "corruptly" in Section 1512(c)(2), the Court

in *Fischer* did not have the "benefits of the normal litigation process," *id.*, which in turn risks an

"improvident or ill-advised" ruling on an issue not squarely presented, *United States v. West*, 392

F.3d 450, 459 (D.C. Cir. 2004).

Relatedly, treating the concurrence's "corruptly" definition in *Fischer* as a binding holding

is in tension with the party-presentation principle, under which courts "rely on the parties to frame

issues for decision and assign courts the role of neutral arbiter of matters the parties present."

*Sineneng-Smith v. United States*, 140 S. Ct. 1575, 1579 (2020) (citing *Greenlaw v. United States*,

554 U.S. 237, 243 (2008)).   The concurrence's suggestion, *Fischer*, 64 F.4th at *352 n.1 (Walker,

J. concurring), that the parties adequately presented the interpretation of "corruptly" is mistaken.

The concurrence observed that the defendants had "raised the issue below," *id.*, without

acknowledging that the district court never adjudicated the vagueness challenge or defined

"corruptly."   And although the concurrence relied on "lengthy discussions by several district

judges in similar cases," *id.*, those judges also declined to offer definitive interpretations of

---

*mens rea* requirement or argued that the term "corruptly" was vague.   *United States v. Lang*, 21-
cr-53 (CJN) (ECF 54, 57).   In *Fischer*, the district court granted Fischer's motion to dismiss the
Section 1512(c)(2) charge alleged in that indictment, referencing the earlier decision in *Miller*
without mentioning or analyzing "corruptly" in its Memorandum Order.   *Fischer*, 21-cr-234
(CJN) (ECF 64).

"corruptly" in those rulings. *See, e.g.*, *United States v. Montgomery*, 578 F. Supp. 3d 54, 84 n.5 (D.D.C. 2021) ("[B]ecause the Court has yet to hear from the parties on the proper jury instructions, the Court will leave for another day the question whether this formulation [of corruptly]—or a slightly different formulation—will best guide the jury.").[4]

In short, the concurrence's interpretation of "corruptly" did not result from the "crucible of litigation," *Fischer*, 64 F.4th at 340 (opinion of Pan, J.), and, thus, is not authoritative.

### 2. Even if the *Marks* rule applied, it would not favor the definition of the concurrence in *Fischer*

Samsel's supplemental brief also appears to seek application of *United States v. Marks*, 430 U.S. 188 (1997). ECF 259 at 2. There is no reason for this Court to turn to *Marks* for guidance to interpret *Fischer*, as Samsel's supplemental brief suggests in passing and without analysis. In *Marks*, the Supreme Court held that, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]'" 430 U.S. at 193 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (plurality op.)). *Marks* is inapposite for several reasons.

*First*, the *per curiam* judgment in *Fischer* correctly reflects the panel majority's agreement that Section 1512(c)(2) encompasses the conduct alleged against the consolidated appellees and that the district court erred in concluding otherwise. This Court should reject Samsel's implication that the panel members did not understand the ways in which they agreed and disagreed and that

---

4 Additionally, no district court judge appears to have instructed a jury using the concurrence's "corruptly" interpretation. *See, e.g.*, SA 203; *United States v. Reffitt*, No. 21-cr-32, ECF No. 119 at 25-26 (D.D.C. Mar. 7, 2022); *United States v. Hale-Cusanelli*, No. 21-cr-37, ECF No. 84 at 24, 27 (D.D.C. May 27, 2022).

they mistakenly issued the judgment.

To the contrary, the *per curiam* judgment correctly identified the lead opinion as the "[o]pinion of the court."   Unlike in cases decided by a "fragmented" court that fails to articulate a holding that finds majority support, here a "single rationale explain[s] the result."   *United States v. Marks*, 430 U.S. 188, 193 (1977).   In *Fischer*, the single rationale explaining the result that a majority of the Court adopted was set forth in all but Section I.C.1 (declining to interpret "corruptly") and footnote 8 of the lead opinion.   That opinion held in Section I.A that Section 1512(c)(2) was "unambiguous": it "applies to all forms of corrupt obstruction of an official proceeding" other than the document destruction and evidence tampering already covered in Section 1512(c)(1).   *Fischer*, 64 F.4th at 336.   Thus, unlike the situation described in *Marks*—where more than five Justices agreed on a result, but no five Justices agreed on a rationale—here, a majority of the Court did agree on a rationale explaining the result: Section 1512(c)(2)'s unambiguous statutory text describing the *actus reus* of the offense.

In this respect, the *Fischer* lead opinion resembles those that have commanded a five-Justice majority in the Supreme Court, with one Justice writing a concurring opinion explaining his or her disagreement with aspects of the majority opinion but joining it anyway.   *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352-53 (2011) (Thomas, J., concurring); *Arizona v. Gant*, 556 U.S. 332, 354 (2009) (Scalia, J., concurring); *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 408 (2002) (O'Connor, J, concurring).   In such a case, the majority opinion controls and *Marks* has no applicability.   *See* Richard M. Re, *Beyond the Marks Rule*, 132 Harv. L. Rev. 1942, 2001-02 nn.311, 322 (2019) (noting that appellate courts have never applied the *Marks* rule to *Concepcion* and *Gant*).   Here, Judge Walker joined the portion of the lead opinion holding that

Section 1512(c)(2) encompasses all forms of obstructive conduct.   That is *Fischer*'s clear holding. The fact that Judge Walker's understanding of the statute's *mens rea* requirement informed his decision to join the majority opinion does not make that understanding a holding of the court.   *Cf. King v. Palmer*, 950 F.2d 771, 784 (D.C. Cir. 1991) (en banc) (observing that "the result is binding even when the Court fails to agree on reasoning") (citing *National Mut. Ins. Co. v. Tidewater Transfer Co.,* 337 U.S. 582, 655 (1949) (Frankfurter, J., dissenting)).

*Second*, as both the lead opinion and the concurrence in *Fischer* recognized, the D.C. Circuit has never applied *Marks* to its own cases.   *See Fischer*, 64 F.4th at 341 n.5 (opinion of Pan, J.); *id.* at 362 n.10 (Walker, J., concurring).   Indeed, "only one federal appellate court has done so." *Id.* at 341 n.5 (opinion of Pan, J.) (citing *Binderup v. U.S. Att'y Gen.*, 836 F.3d 336, 356 (3d Cir. 2016) (en banc)).   Insofar as this Court "needs *some* rule to decide the holding" of *Fischer*, 64 F.4th at 362 n.10 (Walker, J., concurring), that rule is apparent: it should follow the parts of the opinion agreed upon by a majority of the panel, namely, that Section 1512(c)(2)'s plain text encompasses all forms of obstructive conduct.

Applying the concurrence's view of *Marks* to *Fischer* would be particularly "problematic." *King*, 950 F.2d at 782; *see Fischer*, 64 F.4th at 362 n.10 (Walker, J., concurring) (suggesting that his "reading of 'corruptly' may . . . be controlling" under *Marks*).   As the D.C. Circuit has observed, when all the Justices but one "do not subscribe to a given approach to a legal question, it surely cannot be proper to endow that approach with controlling force, no matter how persuasive it may be."   *King*, 950 F.2d at 782.   Here, too, Samsel seeks to rely on a single opinion that "lacks majority support," *id.*, because it decides a question the other members of the panel expressly declined to resolve should not become the law of the circuit.

13

*Third*, even were this Court to apply a *Marks* analysis to *Fischer*, it would not require the Court to adopt the concurrence's view of the meaning of "corruptly" in Section 1512(c)(2).   In *King*, this Court sitting *en banc* held that "*Marks* is workable—one opinion can be meaningfully regarded as 'narrower' than another—only when one opinion is a logical subset of other, broader opinions.   In essence, the narrowest opinion must represent a common denominator of the Court's reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment."   950 F.2d at 781; *see generally Beyond the Marks Rule*, *supra*, at 1994-95 (noting that the D.C. Circuit has adopted a narrower reading of *Marks* than other courts of appeals); *see also United States v. Duvall*, 740 F.3d 604, 618 (D.C. Cir. 2013) (Williams, J., concurring in denial of rehearing en banc).   But the concurrence's reading of "corruptly" does not "embody a position implicitly approved by at least [two judges] who support the judgment"; to the contrary, a "majority of the panel . . . expressly declined to endorse the concurrence's definition of 'corruptly.'"   *Fischer*, 341 n.5 (opinion of Pan, J.).

Moreover, the concurrence's definition was "not one with which [the lead] opinion 'must *necessarily agree as a logical consequence* of its own, broader position' because [the lead] opinion t[ook] no position on the exact meaning of 'corruptly.'"   *Id.* (quoting *King*, 950 F.2d at 782).   To be sure, Judge Walker contended that his opinion was "narrower" than the lead opinion because he "read[s] [Section 1512](c)(2) to cover only *some* of the conceivable defendants the lead opinion might allow a court to convict," *id.* at 362 n.10 (Walker, J., concurring).   But that contention proceeds from the mistaken premise that the lead opinion adopted "all th[e] formulations" of "corruptly" that it considered, *id.*, when in fact it declined to adopt a specific definition.   Rather, the lead opinion resolved only the narrow question of whether an indictment grounded upon the

14

defendants' assaultive conduct properly stated a violation of Section 1512. The Court had no need to delineate the world of "conceivable defendants" that could be convicted under the statute. *Id.* at 339-41 (opinion of Pan, J.). Nor did the Court have any need to resolve the meaning of the term "corruptly" at the motion-to-dismiss stage. The indictments addressed in *Fischer* all alleged that the defendants acted "corruptly," as the statute requires, and any dispute about the meaning of that term could have no bearing on the sufficiency of the indictment for purposes of a motion to dismiss. *See United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018) (indictment "echo[ing] the operative statutory text while also specifying the time and place of the offense" fairly informs a defendant of the charge against him).

With respect to the interpretation of the term "corruptly" in Section 1512(c)(2), therefore, *Fischer* contains "no governing rule," *King*, 950 F.2d at 782, and no "'narrowest' opinion . . . to resolve all future cases," *Duvall*, 740 F.3d at 611 (Kavanaugh, J., concurring in denial of rehearing en banc). The concurrence's definition of "corruptly" in *Fischer* does not bind future panels but is instead entitled to whatever "persuasive authority" it may possess. *Duvall*, 740 F.3d at 605 (Rogers, J., concurring in denial of rehearing en banc). This court should, therefore, conclude that the concurrence's interpretation is sufficient, but not necessary, to prove that a defendant acted corruptly for purposes of Section 1512(c)(2) and that Fischer has not changed the definition or added an element of proof.

## IV.    Conclusion

The "narrow" question before the Court remains whether the indictment sufficiently alleges a violation of Section 1512(c)(2), and it should "neither review the sufficiency of the evidence against the defendant nor craft jury instructions on the elements of the crimes charged." *McHugh*,

583 F. Supp. 3d at 10. "The indictment here uses language tracking the statute and alleges that

[Samsel] 'attempted to, and did, corruptly obstruct, influence, and impede an official proceeding.'

. . . That is sufficient." *United States v. Munchel*, No. 1:21-CR-118-RCL, 2023 U.S. Dist. LEXIS

67141, at \*15 (D.D.C. April 18, 2023).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  */s/ Christopher Brunwin*
CHRISTOPHER BRUNWIN
California State Bar Number 158939
Assistant United States Attorney Detailee
U.S. Attorney's Office
Central District of California
312 N. Spring Street
Los Angeles, California 90012
(213)894-4242
Christopher.Brunwin@usdoj.gov

KYLE R. MIRABELLI
Assistant United States Attorney
N.Y. Bar Number 5663166
601 D Street NW
Washington, D.C. 20005
(202)252-7884
Kyle.Mirabelli@usdoj.gov

JOSEPH HUTTON MARSHALL
D.C. Bar No. 1721890
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20005
(202) 252-6299
Joseph.Hutton.marshall@usdoj.gov

16