**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,**  ) | |
| ) | **Criminal No. 1:21-cr-00537-JMC** |
| **v.**  ) | |
| ) | |
| **RYAN SAMSEL,**  ) | |
| ) | |
| **Defendant.**  ) | |
| ) | |

**DEFENDANT'S MOTION FOR RECONSIDERATION  OF
DETENTION ORDER BASED ON MEDICAL NECESSITY,
DUE PROCSS, AND AN INABILITY TO
ADEQUATELY PREPARE FOR TRIAL**

COMES NOW, Defendant Ryan Samsel, by and through undersigned counsel, and pursuant to 18 U.S.C. §3142(i) and the Due Process Clause of the Fifth Amendment, respectfully moves this Court to reconsider the Detention Order previously entered, and the release him on terms and conditions of pretrial release pursuant to 18 U.S.C Sec. 3143(c).

This motion is based on medical necessity that justifies seeking a Court order for temporary release for the purpose of a medical procedure, specifically surgery on his chest.  Mr. Samsel is being denied needed medical care while detained under circumstances where the medical care he requires has been denied to him, and cannot be adequately provided in a competent manner while in custody.  Prior to his pre-trial detention, Mr. Samsel had been seen by medical professionals regarding the abnormality in his chest, and thus moves for temporary release to undergo surgery by these same medical professionals, specifically Dr. Jared Liebman. Mr. Samsel respectfully requests a hearing be set in this matter as soon as practicable.

In addition, the continued detention of Mr. Samsel pending trial constitutes a deprivation of his Fifth Amendment right to liberty without due process.  Mr. Samsel has been in custody for a period of 34 months without trial -- detention that exceeds the outer boundaries of what due process can tolerate and converts his custodial detention into punishment without trial in violation of his rights under the Fifth Amendment.

Finally, Mr. Samsel's current detention at the Brooklyn Metropolitan Detention Center prevents him from assisting his counsel in the planning and preparation of his defense thereby denying him effective representation of counsel in violation of his rights guaranteed by the Sixth Amendment.  Pursuant to 18 U.S.C. Sec. 3142(i), Mr. Samsel should be released for the purpose of facilitating his participation in the preparation of his case for trial.

I.     **Defendant Samsel's Release is Required As A Medical Necessity In Order For Him to Receive Medical Treatment That Has Been Denied To Him By The Government.**

April 1, 2022, Mr. Samsel first filed a motion requesting temporary release.  Mot. (April 1, 2022) (ECF No. 142).  At that time, Mr. Samsel had been detained for fifteen (15) months, since January 30, 2021, and had been transferred between eight (8) different facilities.  These repeated transfers resulted from either various altercations that Mr. Samsel has had with correctional officers, and/or medical care necessary for the injuries he suffered at the hands of those officers during these altercations.[1]

*At that time*, no January 6 defendant had been held in solitary confinement longer, nor transferred between as many facilities, nor suffered as serious of injuries as had Mr. Samsel. Rather than order his temporary release, on May 17, 2022, this Court ordered Mr. Samsel to

---

[1] Although the Court has previously observed that Mr. Samsel suffered from preexisting conditions, these conditions have been exacerbated by the injuries Mr. Samsel sustained while detained as well as the failure to receive necessary medical care.

"receive an independent medical evaluation at a tertiary research center" and that he be "transported to an appropriate Bureau of Prisons facility for the purpose of receiving the independent medical evaluation."  Order at 1, 2 (May 17, 2022) (ECF No. 159).

Following that Order, on or about June 1, 2022, Mr. Samsel was transferred to FDC Philadelphia where he was placed in administrative segregation and/or the Special Housing Unit ("SHU"), and repeatedly denied regular access to legal counsel.  *See* Defendant's Status Report (July 6, 2022) (ECF No. 180).  Despite these challenges, Mr. Samsel did ultimately did receive a medical evaluation that resulted in his referral to a cancer specialist.  *Id*.  After further medical evaluation, Mr. Samsel received the recommendation that he undergo a surgical procedure to his chest.  See Exhibit A, Renewed Mot. Release (Sept. 2, 2022) (ECF No. 191).

When no such medical care was provided, on September 2, 2022, Mr. Samsel again requested a temporary release to obtain the medical treatment he had long been denied. Renewed Mot. Release (Sept. 2, 2022) (ECF No. 191).  On or about September 26, 2023, Mr. Samsel was transferred again – this time to USP Lewisburg.  Status Report (Sep. 26, 2023) (ECF No. 198).

On October 3, 2022, the Court denied Mr. Samsel's pending motion for temporary release, but ordered that, "the Bureau of Prisons . . . give [Mr. Samsel] another opportunity to complete the required lab testing and receive the surgery recommended by his doctors," Minute Order (Oct. 3, 2022).  This Order credited to some degree the Government's claim that Mr. Samsel was in some measure responsible for not receiving the recommended surgery because Mr. Samsel was alleged to have refused the necessary pre-operative bloodwork.

On December 16, 2022, Mr. Samsel again sought the Court's assistance in receiving medical treatment he had long been denied.  Mot. Cont. Trial (Dec. 16, 2022) (ECF No. 229).

Although the Court granted Mr. Samsel's motion to continue his trial, it declined to order that Mr. Samsel receive specific medical treatment.  Specifically, on January 30, 2023, the Court wrote:

> "The Court has previously ordered independent evaluations to ensure [Mr. Samsel's] ability to proceed in this criminal case, but the Court does not have the authority to keep compelling the actions of third parties not before the Court in this case."

Minute Order (Jan. 30, 2023).

> "While the Court agrees with Defendant that the Court has the authority to order treatment to ensure Defendant has the ability to adequately prepare his defense and appear at trial, Defendant has not shown that inadequate medical treatment is the proximate cause of his inability to prepare for trial, as opposed to other impediments not attributable to the Government."

*Id.*

Of note, since being evaluated and treated at Jefferson Hospital in September of 2022, Mr. Samsel has not had the surgery recommended by the doctors at that facility.  Rather, following his transfer back to USP Lewisburg in September 2022, he was again placed in solitary confinement and/or protective custody without the benefit of any third-party medical care until his transfer to MDC Brooklyn on or about April 25, 2023.  Once he arrived in Brooklyn, Mr. Samsel was again placed in solitary confinement and/or protective custody for over a month and denied access both to his medical records as well as his legal file.  Even as of this time – more than four months following his transfer to Brooklyn MDC -- Mr. Samsel has still not yet seen a third-party medical provider and has not received or otherwise been given access to the legal records he had while at Lewisburg.

Most recently, photographs of Mr. Samsel's current conditions of confinement at MDC

Brooklyn, where he is now being held, appeared in the national media and online.[2]



---

[2] Media reports have inaccurately identified these photographs as coming from FDC Philadelphia – that is incorrect.
These photographs were taken in FDC Brooklyn.

5





Mr. Samsel again respectfully requests the Court order Mr. Samsel's temporary release so that he may undergo the needed medical procedure from his own doctors, with whom he had received treatment prior to his detention in this case. Pursuant to 18 U.S.C. §3142(i), a court may "permit the temporary release of [a defendant], in the custody of a United States marshal or another appropriate person, to the extent that . . . such release [is] necessary for preparation of

the person's defense *or for another compelling reason*."  Mr. Samsel argues that his temporary release is necessary for the compelling reason of needing to undergo surgery that has been determined to be a medical necessity by the only medical professionals to offer an informed opinion.[3]

Ultimately, given Mr. Samsel's history in this case as far as his difficulty with obtaining medical treatment, and the lack of complete records to any providers through the USMS and BOP, he is understandably reluctant to trust the doctors chosen by the USMS and/or the BOP to perform surgery without them having a complete medical history; and resolve the medical issues that he has been facing since his first day in pre-trial detention.

Further, the likelihood of any normal rehabilitation post-procedure would not be possible in a facility that keeps him in a small cell, 24/7, where he eats, sleeps and even showers in the same cell, so that he never leaves it.  For these reasons, Mr. Samsel's temporary release is "necessary" and should be so ordered.

## II.     The Defendant Must Be Released to Remedy The Violation of His *Constitutional Right to Due Process*.

The government may detain a defendant prior to trial consistent with the due process clause of the Fifth Amendment so long as confinement does not amount to "punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535 (1979); United States v. Salerno, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987) (pretrial detention must be "regulatory, not penal").

Even in the absence of an expressed intention to punish, detention can become impermissible punishment when the detention "`appears excessive in relation to'" the non-

---

[3] As set forth in more detail below, Mr. Samsel also seeks his release to meaningfully participate in the preparation of his defense pursuant to this same code provision.

punitive purpose.  Wolfish, 441 U.S. at 538, 99 S.Ct. at 1873 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 169, 83 S.Ct. 554, 568, 9 L.Ed.2d 644 (1963)).

Pretrial detention of a defendant -- when of reasonable duration -- serves important regulatory purposes, including the prevention of flight and the protection of the community from a potentially dangerous individual.   Salerno, 481 U.S. at 747-49, 107 S.Ct. at 2101-02. However, when detention becomes "excessively prolonged" it becomes unreasonable in relation to the regulatory goals of detention, at which point a violation of constitutional due process rights occur. *See* Salerno, 481 U.S. at 747 n. 4, 107 S.Ct. at n. 4.

The Supreme Court in Salerno did not address the issue of how long of a period of pretrial detention becomes a due process violation.

The D.C. Circuit has not addressed the issue of granting release from pretrial detention based on a violation of due process caused by delay in bringing a defendant to trial.  Other circuits, where pretrial delays are more frequent due to the size and complexity of violent criminal organizations, have developed a body of case law that should guide this Court's decision-making.

The Ninth Circuit recently addressed this issue squarely in United States v. Torres, 995 F.3d 695 (9th Cir. 2021).   In evaluating the claimed violation of due process, the Ninth Circuit began with the following observation:

> It is undisputed that at some point, pretrial detention can "become excessively prolonged, and therefore punitive," resulting in a due process violation. United States v. Salerno, 481 U.S. 739, 747 n.4, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The point at which detention constitutes a due process violation requires a case-by-case analysis…. [I]n evaluating whether a due process violation has occurred, we weigh the following factors: (1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention under the Bail Reform Act.

Id. at 708.

The Ninth Circuit did affirm the district court's conclusion that further detention was justified – based primarily on the finding on the second factor that the Government was not at fault for the excessive delays -- but did so with an important caveat as it related to the trial date that was only one month away:

> And if Torres is not tried by his current trial date of May 25, 2021, the district court and the prosecution must consider whether further prolonging Torres's pretrial detention crosses the line from regulatory to punitive detention.

Id. at 710.

In United States v. Gonzales Claudio, 806 F.2d 334 (2d Cir. 1986), the Second Circuit addressed a similar challenge to pretrial detention, stating that review of the basis for detention to determine whether a due process violation is established requires a more exacting view of the evidentiary justification supporting detention than is required under the Bail Reform Act:

> "[W]e are entitled to apply a broader standard of review in determining the extent to which the facts regarding risk of flight, as found by the District Court, have significance on the constitutional issue of whether continued detention violates due process limitations."

Id. at 343; see also United States v. Jackson, 823 F.2d 4, 8 (2nd Cir.1987); United States v. Gallo, 653 F.Supp. 320, 327 (E.D.N.Y.1986).

Although the language of the Second Circuit in Gonzales Claudio addressed the due process claim in the context of "risk of flight," the Court cited to and quoted from United States v. Zannino, 798 F.2d 544, 546 (1st Cir.1986), where the First Circuit explicitly invoked the more demanding review of a "danger to the community" finding that justified detention in the context of a due process claim.

The Ninth Circuit in Torres even recognized that at some point the issue of risk to the community must give way and a remedy provided for a due process violation based on excessive pretrial detention must be provided:

> [A]ll parties agree that *at some point, regardless of the risks associated with Torres' release*, due process will require that he be released if not tried. [Citation omitted].  And if Torres is not tried by his current trial date of May 25, 2021, the district court and the prosecution must consider whether further prolonging Torres's pretrial detention crosses the line from regulatory to punitive detention….

> …. Our decision to uphold the district court's ruling, however, is not made lightly.  Because of the troubling length of Torres's pretrial detention, due process demands that the district court begin Torres's trial or reconsider bail subject to appropriate conditions very soon."

Torres, 995 F.3d at 710 (emphasis added).

The defendant in Torres was arrested on August 26, 2019.  The Ninth Circuit's decision on his appeal of the detention order was filed on April 23, 2021 – at that point the defendant had been detained in custody for a period of just under 21 months.  The defendant was set to begin trial in the Central District of California one month later, on May 25, 2021 – approximately 22 months after he was detained.  The Ninth Circuit could not have been more clear in stating that the length of the defendant's pretrial detention had reached the outer limits for due process purposes.  Due process rights trumped whatever public policy concerns were embodied in the Bail Reform Act with regard to risk of flight or danger to the community.

Defendant Samsel has been detained pending trial since his arrest on January 30, 2021 – a period of 32 months to date.  He is currently set for trial beginning on October 23, 2023.  If this case proceeds to trial as scheduled, he will spend almost 2 years and 10 months in detention before receiving his right to a "speedy trial."

The question before this Court is not whether the application of the Bail Reform Act justifies his continued detention for another 3 months, but whether every day he continues to be detained – when it will be 34 or more months between his arrest and trial -- constitutes a daily continuing violation of his constitutional right to due process.  This self-evident violation

requires the only immediate judicial remedy, i.e., release from custody on terms and conditions of pretrial release.

In Torres the Ninth Circuit established a three part test to consider the due process claim raised by the defendant, based on case authority from the First and Second Circuits where lengthy pre-trial delays have been found to be violations of due process:  (1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention under the Bail Reform Act.[4]

### 1.   Length of Detention

In Torres, the Government conceded that detention of 21 months – regardless of the cause – weighed in favor of finding a due process violation.  Id at 708. ("The government conceded at oral argument that the length of Torres's pretrial detention weighs in favor of recognizing a due process violation. We agree.").   The Department of Justice in the Central District of California is the same Department of Justice in the District of Columbia.  It cannot be heard to say now that 34 months between the date of Mr. Samsel's arrest and the scheduled trial is not a factor that weighs in favor of finding a due process violation when it conceded in Torres that 21 months was sufficient to weigh in favor of finding a violation.

### 2.   Prosecution's Contribution to the Delay

This factor is not one of assigning "blame" in a pejorative sense, although the factual analysis from most cases often affixes pejorative fault on one side or the other for having caused the delay(s) in getting to trial.

---

[4] This is not a reconsideration of the factors reflected in the Bail Reform Act. If a defendant was entitled to release under four-factor test of the Bail Reform Act, resort to a claim based on a violation of due process would be irrelevant. The due process test presumes release under the Bail Reform Act's four-part analysis is not supported.

That fixing "blame" isn't the point of the second <u>Torres</u> factor is reflected in facts of that case. In <u>Torres</u>, all three participants – the Courts, the government and the defendant – agreed that the Government was not responsible for any of the 21-month delay in the <u>Torres</u> case getting to trial.

> "*Torres does not dispute that the prosecution bears no responsibility for the delay in his case.* The first two continuances were stipulated to for the benefit of Torres's counsel to adequately prepare his case and the remainder of the continuances were a direct result of the COVID-19 pandemic. This factor weighs against finding a due process violation."

<u>Id</u>. at 708.

But the Ninth Circuit nevertheless found that the outer limits of what could be tolerated by due process had been reached after 21 months even when the government was blameless and the defendant in <u>Torres</u> was responsible for part of the delay.[5]

Notwithstanding the fact that the government had no fault for any of the 21-month delay, in the final words in the last paragraph of the opinion the Ninth Circuit held "…*due process demands* that the district court begin Torres's trial or reconsider bail subject to appropriate conditions very soon."

The clear implication of this passage is that the government can be completely blameless for the delay but a district court is still obligated by the Constitution to release Mr. Samsel from pretrial detention because the delay has violated his due process rights to not be deprived of his liberty without at timely trial.

But those are not the facts here. The government, and actors for whom the government must be accountable, are responsible for the entirety of the 32-month delay to date.

---

[5] The first continuance referenced in <u>Torres</u> was for the period of October 3, 2019 – his initial trial date – to February 11, 2020, and the second was from February 11 to April 7, 2020. Both were based on unspecified scheduling conflicts for Torres' attorney. The second continuance crossed over into the start of COVID pandemic's impact on court operations, with the Central District of California suspending jury trials effective March 13, 2020. <u>Id</u>. at 700. The two continuances sought by the defendant totaled 6 months of the 21-month delay.

Repeatedly in cases arising out of the events of January 6 the government came before Judges in this District in 2021 and early 2022 and offered versions of "This is the largest and most complicated case ever investigated and prosecuted; the discovery obligations go beyond anything the Government has ever undertaken in the past; etc.," as justification for not setting trial dates to bring cases to trial, including this case.  It was not until November 2021 that the government even had databases in place from which defense counsel were supposedly able to access video discovery.  But it was months after that before all the necessary "licenses" were made available through which defense counsel could access the discovery in their own.  Even when the licenses were available, defense counsel and/or their staffs had to undergo technical training on how to access and search the databases.

The entirety of that period of delay was caused by the government opting to charge and arrest defendants such as Mr. Samsel when it was not prepared to move the cases forward to comply with the accused rights to due process.

But the complexity and scope of a case is not a basis to excuse a delay that violates due process.  In United States v. Briggs, 697 F.3d 98, 102-03 (2nd Cir. 2012), considering the complexity of that case, the Second Circuit wrote:

> This case … has been slowed by repeated motions and abundant discovery. As the government points out in opposition to Briggs's appeal, Briggs himself has joined most of the motions that his co-defendants have filed. [Citation omitted].  It appears, therefore, that he bears some of the blame for his trial's delay. Accordingly, this fact also weighs against finding a due process violation.
>
> We caution, however, that the *difficulties faced by the prosecution in a large and complex case do not justify the indefinite detention of the defendants…. When the government decides to prosecute a case of considerable complexity and scope, it must still pursue that case with promptness and energy. Due process does not slumber because cases are complex.*

The defendant in <u>Briggs</u> had been awaiting trial 23 months when he took his appeal to the Second Circuit, and that Court noted he was partly responsible for some of that delay. But it still cautioned that due process rights were becoming implicated by the delay.

The complexity here is solely the result of investigative and prosecutorial decisions made by the government. Nothing compelled the government to bring hundreds of cases in the span of several months when it had abundant video evidence that wasn't going to evaporate, and a five-year statute of limitations provided plenty of time to get cases ready for prosecution before filing indictments. Government decision-making stranded dozens of defendants, including Mr. Samsel, in custody through months of status conferences while the government endeavored to comply with the Rule 16 and <u>Brady</u>/<u>Giglio</u> obligations. Mr. Samsel should have not been made to sit in custody while the government did the work it should have done prior to seeking to indict him.

But Mr. Samsel's case has an added fact of the physical abuse and resulting injuries suffered by him at the hands of jail staff contracted by the U.S. Marshall's Service to maintain custody of Mr. Samsel pending trial. His injuries, and the medical treatment required to address those injuries are a matter of record with this Court. These circumstances resulted in substantial delays while Mr. Samsel underwent medical treatment and recovered from his injuries. They significantly impaired and delayed his ability to assist his counsel in preparing for trial. Not only has Mr. Samsel been hospitalized due to his injuries, he has had a dozen or more medical examinations, treatments, and follow-up visits to address the physical problems attributable to the injuries suffered at the hands of individuals acting on behalf of the government.

In addition, Mr. Samsel is now housed at his 8th different facility over the 32 months he has been detained pending trial. That does not include the number of times he has been relocated

inside each different facility for reasons never adequately explained.  These moves have repeatedly interfered with his ability to secure his Sixth Amendment right to assist in the preparation of his own defense as he has been repeatedly cutoff from access to and contact with his counsel.   Personal belongings and materials used by him to help prepare his defense have gone missing with every move.  Some moves – such as the one that has him currently housed in FDC Brooklyn – have placed him at ever-increasing distances from this Court and his counsel located in Washington D.C.

There can be no question but that the government has been responsible, directly and indirectly, for nearly the entirety of the delay involved in getting his case to trial.  This second Torres factor weighs heavily in favor of finding a due process violation.

> 3.   The Third Torres Factor Also Favors Finding a Due Process Violation Justifying Release.

Torres says the third factor in the analysis of determining if there is a due process violation involves an examination of "the evidence supporting detention under the Bail Reform Act."

With respect to the "strength" of the evidence justifying detention under the Bail Reform Act, when considered in the context of whether an extended period of pretrial detention violates a detainee's due process rights, that same evidence may no longer justify continued detention.  In United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986), the Third Circuit observed:

> [A] determination under the Bail Reform Act that detention is necessary is without prejudice to a defendant petitioning for release at a subsequent time on due process grounds…. *In some cases, the evidence admitted at the initial detention hearing, evaluated against the background of the duration of pretrial incarceration and the causes of that duration, may no longer justify detention.*

But, as noted above, even when the evidence is strong, and based on prior evaluation of the Bail Reform Act factors detention is warranted, the fundamental concept of due process

under the Fifth Amendment demands release to remedy a violation of that constitutional right

notwithstanding that there might be a risk of flight or danger to the community as a result:

> "[A]ll parties agree that at some point, *regardless of the risks associated
> with [Defendant's] release,* due process will require that he be released if
> not tried."

Torres, 995 F.3d at 710 (emphasis added).

Whatever risk may still exist 32 months after the events of January 6, 2021, there are

certainly terms and conditions of pretrial release – up to and including home incarceration

enforced with GPS monitoring – that would mitigate those risks to the degree necessary to allow

for Mr. Samsel's due process rights to be respected, as well as to allow him to receive needed

medical treatment.

> X.   Mr. Samsel Should be Granted Temporary Release to Facilitate Preparation for
>      Trial Pursuant to 18 U.S.C. Sec. 3142(i).

After an initial determination of pre-trial detention, the Bail Reform Act provides that a

"judicial officer may, by subsequent order, permit the temporary release of the person, in the

custody of a United States marshal or another appropriate person, to the extent that the judicial

officer determines such release to be necessary for preparation of the person's defense or for

another compelling reason." 18 U.S.C. § 3142(i).

Under this statutory provision, the defendant otherwise subject to pretrial detention may

be granted temporary release by showing the presence of two (2) factors: (1) that his temporary

release is necessary for the preparation of his defense or another compelling reason; and, (2) that

he could be released to the custody of the an "appropriate person." United States v. Dhavale, No.

19-MJ-00092, 2020 WL 1935544 (D.D.C. Apr. 21, 2020).

A pretrial detainee generally is "hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense." United States v. Ali, 965 F. Supp. 2d 139, 151-52 (D.D.C. 2013) (citing Barker v. Wingo, 407 U.S. 514, 520, 533 (1972)).

> "Pretrial detention limits defense counsels' access to their client and thus limits counsels' ability to prepare effectively for trial and to prepare the defendant to testify. Moreover, the physical and psychological toll of pretrial detention, particularly a detention lasting for several years, where the defendant is effectively cut off from everyone but his attorneys, can significantly affect a defendant's ability to participate in his own defense."

*Id.*

Mr. Samsel's case is practically a case study as to how his ability to assist his counsel in the preparation of his defense has been compromised by the circumstances and governmental decision-making with respect to where he has been housed while being detained.  The beatings he has been subjected to, the injuries he has suffered, and the numerous times he has been relocated for a myriad of reasons have all worked to undermine the working relationship between Mr. Samsel and his counsel of choice by creating obstacles to his ability to meaningfully contribute to and assist in the preparation of his defense.  At this point, given all that has happened, the only truly effective remedy to cure this issue is to allow him to be released to a suitable third-party custodian in an appropriate location where he can work directly with his counsel to prepare his defense.

Whether the Court considers the requested relief appropriate under 18 U.S.C. § 3142(i) or as changed circumstances under 18 U.S.C. § 3142(f), pre-trial release is appropriate here because Mr. Samsel cannot meaningfully participate in the preparation of his defense without the ability to review in the presence of his counsel the video evidence likely to be used against him at trial.

The ability to have this interaction with Counsel in preparation for trial is paramount.

<u>CONCLUSION</u>

Based on the foregoing, Defendant Ryan Samsel respectfully requests that this Court enter an order granting him immediate release on terms and conditions of pretrial release pursuant to 18 U.S.C. Sec. 3142(g) based on a compelling reason, as well as to facilitate his meaningful participation in assisting his attorneys to prepare for his defense at trial.

Alternatively, Mr. Samsel requests this Court to determine that the length and circumstances of his detention have exceeded the boundaries of what is tolerable under the Fifth Amendment, that his right to due process has been violated, and the only available remedy to vindicate his rights are to order him to be released on terms and conditions of pretrial release.

Upon the issuance of such an Order, Mr. Samsel will provide to the Court a release plan including a location for him to reside and a suitable third-party custodian.  Mr. Samsel will accept whatever other terms and conditions of pretrial release the Court made determine are necessary and appropriate.

Dated: August 27, 2023                    Respectfully submitted,

                                          */s/ Stanley E. Woodward, Jr.*
                                          Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                          BRAND WOODWARD, ATTORNEYS AT LAW
                                          1808 Park Road NW
                                          Washington, DC  20010
                                          202-996-7447 (telephone)
                                          202-996-0113 (facsimile)
                                          Stanley@BrandWoodwardLaw.com

                                          */s/ William L. Shipley*
                                          William L. Shipley
                                          The Law Offices of William L. Shipley
                                          P.O. Box 745
                                          Kailua, HI 96734
                                          Telephone: (808) 228-1341

808Shipleylaw@gmail.com

*Counsel for Defendant Ryan Samsel*

## CERTIFICATE OF SERVICE

On August 27, 2023, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
Brand Woodward Law, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Ryan Samsel*
