IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-cr-00537-JMC |
| | : | |
| RYAN SAMSEL, | : | |
| JAMES TATE GRANT, | : | |
| PAUL RUSSELL JOHNSON, | : | |
| STEPHEN CHASE RANDOLPH, | : | |
| JASON BENJAMIN BLYTHE, | : | |
| | : | |
| **Defendants.** | : | |

### UNITED STATES' MOTION FOR COURT TO RECONSIDER RULING ON ADMISSIBILITY OF THIRD-PARTY VIDEOS

The United States of America, by and through its attorneys, respectfully submits additional argument and analysis regarding the authentication of certain third-party video offered during trial in this matter. As detailed below, before the trier of fact may consider a piece of evidence under Federal Rule of Evidence 901(a), the proponent of such evidence must only establish indicia of authenticity sufficient for a reasonable person to find that the evidence offered is what it purports to be. *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). The government submits that the testimony of U.S. Capitol Police ("USCP") Sergeant Tim Lively offered on October 24, 2023 was sufficient to establish the authenticity of Government Exhibits 313, 318, 319, 320, 324, 325, 327, 334, 335, 337 and 339, and the government respectfully asks that the Court reconsider its ruling with respect to these exhibits.

Should the Court maintain that the testimony of Sergeant Lively was insufficient to establish the authenticity of these exhibits, the government intends to authenticate these exhibits

under Rule 901(b)(3) by comparing their contents to USCP closed-caption video ("CCV") and Metropolitan Police Department ("MPD") body-worn camera ("BWC") footage.

**Legal standard for Authentication under F.R.E. 901(a)**

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement. As relevant here, those examples include:

> (1) *Testimony of a Witness with Knowledge*. Testimony that an item is what it is claimed to be.
> . . .
> (3) *Comparison by an Expert Witness or the Trier of Fact*. A comparison with an authenticated specimen by an expert witness or the trier of fact.
> (4) *Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

Fed. R. Evid. 901(b)(1), (3), (4).

Establishing an item's authenticity is not "a particularly high hurdle." *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted). "The standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only

'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)).

To make out a *prima facie* showing, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). *See, e.g.*, *United States v. Broomfield*, 591 F. App'x 847, 851-852 (11th Cir. 2014) (unpublished) (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged") (citing *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). The party seeking to admit evidence also need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994).

**Admitting the Exhibits Under Fed. R. Evid. 901(b)(1) and/or 901(b)(4)**

Any witness with knowledge of the events depicted in a photograph or video can authenticate the evidence, including but not limited to the person who took the photograph or video. *See* Fed. R. Evid. 901(b)(1). Here, that includes any person who was present for the events depicted in the photograph or video and has a recollection sufficient for them to recognize the scene depicted and testify that they appear to fairly and accurately show the events that took place. *See, e.g., Am. Wrecking Corp. v. Sec'y of Lab.*, 351 F.3d 1254, 1262 (D.C. Cir. 2003); *see also United States v. Rembert*, 863 F.2d 1023, 1026 (D.C. Cir. 1988) (citing, *e.g., Simms v. Dixon*, 291 A.2d 184 (D.C. 1972); E. Cleary, McCormick on Evidence (3d ed. 1984) at 671).

Even a person who was not present for a specific event can circumstantially establish the authenticity of a photograph or video depicting that event. As explained, the bar for establishing authenticity sufficient to admit evidence to the jury is very low: only a *prima facie* showing that

the evidence is what the government purports it to be—namely, photographs and videos of the Capitol siege in progress. For that reason, even a witness who was not present during the events depicted can help authenticate an exhibit if they can (1) identify the location(s) depicted in the photograph or video; and (2) establish that the video is generally consistent with their knowledge of events that occurred at that location during the Capitol riot. *See, e.g., Rembert*, 863 F. 2d at 1028 ("Even if direct testimony as to foundation matters is absent . . . the contents of a photograph itself, together with such other circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence." (*quoting United Stearns*, 550 F.2d at 1171)); *Holmquist*, 36 F.3d at 169 ("A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without the testimony of the photographer or some other person who was present at the time it was taken."); *Cf. Safavian*, 435 F. Supp. 2d at 36 (authenticating emails based on "distinctive characteristics" and citing Fed. R. Evid. 901(b)(4)); *Klayman v. Judicial Watch*, 299 F. Supp. 3d 141 (D.D.C. 2018) (admitting emails and advertisements by comparing later versions with admitted versions).

Here, the government has sought to introduce videos taken by journalists and others in and around the Capitol grounds on January 6, 2021 through Sergeant Tim Lively. As to each video, Sergeant Lively testified that he was at or near the location at or near the time that the video was taken, and that the video accurately depicted what was occurring at that location at that time. For example, Government Exhibit 313 depicts defendant Ryan Samsel (identified by Lively as the man in the red hat with the jean jacket from the Peace Circle) in a verbal and physical confrontation with a police officer at the police line on the Lower West Terrace. Sergeant Lively testified that he was at or near the police line where the video was taken and that the video accurately depicted

the scene at that time and location. That testimony should suffice for the exhibit to be admitted into evidence.

The authenticity of these video exhibits was further corroborated by circumstantial indicia of reliability[1] and distinctive characteristics recognizable in them. In each video exhibit, several distinctive characteristics—the covered scaffolding and media tower on the West Plaza, the police line comprised of USCP and MPD officers—were identified by Sergeant Lively as being consistent across these exhibits and in comparison to previously authenticated exhibits. He also testified that at no other time in his career had he seen this type of protest at the Capitol, nor had he seen a group of protesters this large amassed on the Lower West Terrace while the inaugural stage was in being constructed. The fact that these distinctive characteristics appeared in the exact same manner across these exhibits consistent with the memory of a person present at the time further establishes that the videos are authentic depictions of the events they capture.

**Admitting the Exhibits Under 901(b)(3)**

Alternatively, the government may seek to use authenticated video or photographs to in turn authenticate other, substantially similar videos or photographs of the same scene. *See* Fed. R. Evid. 901(b)(3) (authentication by comparison with another authenticated specimen); *see. e.g.*,

---

[1] *See, e.g.*, *Holmquist*, 36 F.3d at 169 ("A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without the testimony of the photographer or some other person who was present at the time it was taken."); *United States v. Kandiel*, 865 F.2d 967, 974 (8th Cir. 1989) ("The contents of the tape recordings have numerous references to people, places and activities that were corroborative of other testimony in the record"); *Rembert*, 863 F.2d at 1028 (photographs from ATM machine's video system sufficiently authenticated by, among other things, "circumstantial evidence provided by the victim witnesses as to the occurrences at the ATM machines" and "the internal indicia of date, place, and event depicted in the evidence itself"); *United States v. Stearns*, 550 F.2d 1167, 1171 (9th Cir. 1977) (Kennedy, J.) ("the contents of a photograph itself, together with such other circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence.").

*Stearns*, 550 F.2d at 1171-72 (where circumstantial evidence established one photograph's authenticity, it "authenticates the other four pictures as to time"); *see. e.g.*, *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1371; 2021 WL 3628664, at *8 (Fed. Cir. Aug. 17, 2021) ("Authentication by comparison is routine."); *Diaz v. County of Ventura*, 512 F. Supp. 3d 1030, 1035 (C.D. Cal. 2021) ("Here, the videos can be authenticated through other evidence on the record—namely, other video and photographic evidence of the incident that Green provides."); *United States v. Safavian*, 435 F. Supp. 2d 36, 40 (D.D.C. 2006) ("e-mails that are not clearly identifiable on their own can be authenticated under Rule 901(b)(3)," by the jury's comparison with other "emails that already have been independently authenticated").

In another January 6 trial in this district, the court found similar "open-source" evidence to be authentic by comparison under Rule 901(b)(3). *United States v. Rodean*, 1:21-cr-57-TNM, Dkt. 50 (D.D.C. Apr. 20, 2022). In *Rodean*, the court compared screenshots of video from a known source (USCP CCV), which showed the Senate Wing Doors from the inside facing out, with screenshots of video footage taken by an unspecified rioter showing the Senate Wing Doors from the outside looking in. *Id.* at 2. The court noted similar objects depicted in both sets of screenshots: doors of a building flanked by windows, a crowd of rioters near the windows, and a wooden beam sticking through a shattered window. *Id.* The court found this indicia of authenticity sufficient to grant the government's pretrial motion to find the video taken by the unspecified rioter to be authentic. *Id.* at 6.

Indeed, the government's proposed video and photographic exhibits can provide circumstantial evidence of each other's authenticity. If testimony were to establish, for example, that multiple open-source videos each showed the same events from different angles, and were obtained from separate sources, it would be highly unlikely that multiple different sources could

6

have created videos or photographs depicting the same event from different angles, with the same distortion or inaccuracy repeated in each of the videos or photographs from a different angle.

If the Court determines that it will not admit Government Exhibits 313, 318, 319, 320, 324, 325, 327, 334, 335, 337 and 339 based on Sergeant Lively's testimony for the reasons articulated above, the government requests leave to supplement its exhibits with additional relevant CCV and BWC and to solicit additional witness testimony in order to authenticate these third-party exhibits through comparison.

Dated: October 24, 2023                         Respectfully Submitted,

                                                MATTHEW M. GRAVES
                                                United States Attorney

                                        By:     /s/ Hutton Marshall
                                                J. HUTTON MARSHALL
                                                D.C. Bar No. 1721890
                                                ALEXANDRA F. FOSTER
                                                D.C. Bar No. 470096
                                                KYLE R. MIRABELLI
                                                N.Y. Bar No. 5663166
                                                CHRISTOPHER BRUNWIN
                                                CA Bar No. 158939
                                                Assistant United States Attorneys
                                                601 D Street, N.W.
                                                Washington, D.C. 20579