UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No: 21-CR-00537-JMC |
| v. | : | |
| | : | |
| RYAN SAMSEL, | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL OR JUDGMENT OF ACQUITTAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this response in opposition to Defendant Ryan Samsel's Motion for a New Trial or Judgment of Acquittal (ECF 359) (Def. Mot.). Defendant asks the Court for a new trial, alleging that the Government presented insufficient evidence as to Count Ten (obstruction of an official proceeding) and should not have admitted the evidence underlying the Defendant's conviction in Count Thirteen (assault with a plank). Because Defendant has failed to meet his burden to show that a new trial would probably produce an acquittal, the integrity of the verdict has not been called into question, as required to receive a new trial pursuant to Federal Rule of Criminal Procedure 29 or 33. Therefore, the defendant's motion should be denied.

**I.    Background**

The Court held a bench trial from October 23, 2023 through November 2, 2023. On February 2, 2024, the Court issued its verdict, finding Ryan Samsel guilty of the following counts of the Fourth Superseding Indictment (ECF 245):

- Count One: Obstructing, Impeding, or Interfering with Law Enforcement During a Civil Disorder, 18 U.S.C. § 231(a)(3) (Conduct on the Pennsylvania Walkway);

- Count Two: Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon or Inflicting Bodily Injury, 18 U.S.C. § 111(a)(1) and (b) (Assault on C.E.);

- Count Eight: Disorderly or Disruptive Conduct in a Capitol Building or Grounds, 40 U.S.C. § 5104(e)(2)(D);

- Count Nine: Act of Physical Violence in a Capitol Building or Grounds, 40 U.S.C. § 5104(e)(2)(F);

- Count Ten: Obstruction of an Official Proceeding Before Congress, 18 U.S.C. § 1512(c)(2);

- Count Eleven: Obstructing, Impeding, or Interfering with a Law Enforcement Officer During a Civil Disorder, 18 U.S.C. § 231(a)(3) (Conduct on the West Front against US Capitol Police);

- Count Twelve: Assaulting, Resisting, or Impeding Certain Officers, 18 U.S.C. § 111(a)(1) (Grabbing US Capitol Police Officer's Shield)

- Count Thirteen: Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon 18 U.S.C. § 111(a)(1) and (b) (Throwing Plank of Wood at Metropolitan Police Department Officers)

The Court acquitted Defendant of Count Three, Assaulting, Resisting or Impeding an Officer Using a Dangerous Weapon, 18 U.S.C. § 111(a)(1) and (b) (Assault on Officer D.C.), and Counts Five through Seven, charging Defendant with different subcategories of 18 U.S.C. § 1752.

On February 9, 2024, the Court filed its Findings of Fact and Conclusions of Law as to each Count and each Defendant. ECF 345. Relevant to the Defendant's argument in this motion, the Court found:

*[Count Ten]*
…
*2. Defendants Obstructed the Official Proceeding Knowingly and Intentionally*
In count eight, the Court concluded that Mr. Samsel, Mr. Grant, and Mr. Johnson knew that a proceeding relating to the certification was happening in the Capitol and engaged in disruptive and disorderly conduct for the express purpose of interfering with that process. *See infra* Section II(F)(i)(2). The Court incorporates by reference those findings and conclusions here because they form the basis for the Court's determination that the Government established this element of the offense beyond a reasonable doubt as to Mr. Samsel, Mr. Grant, and Mr. Johnson. Having concluded that it was their purpose to obstruct and interfere with the certification proceeding, the Court has no question regarding Mr. Samsel's, Mr. Grant's, and Mr. Johnson's intent.

2

...
### [Count Thirteen]

Finally, Mr. Samsel is charged with another count of assaulting, resisting, or impeding officers with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1), (b). This count alleges that Mr. Samsel threw a wooden 2x4 at a line of MPD officers. The Court finds that the Government proved that Mr. Samsel committed this offense beyond a reasonable doubt and thus finds Mr. Samsel GUILTY of count thirteen.

Like much of Mr. Samsel's conduct, this incident is captured on video. As MPD Capt. Augustine testified at trial, MPD officers had established a police line on the West Plaza to hold back a crowd that was on the lawn. ECF 322 at 143:24–144:4. Mr. Samsel took a wooden, 2x4 plank that he found on the Capitol grounds and threw it at these officers. Gov. Ex. 203 at 6:53–7:09; Gov. Ex. 202. One officer ducked to avoid the plank. Gov. Ex. 203 at 7:08–7:09; Gov. Ex. 202 at 0:17–0:19.

The Court has identified the elements for this offense, see infra Section II(B), and finds that each has been satisfied beyond a reasonable doubt. First, Mr. Samsel assaulted, resisted, or impeded MPD officers. Throwing an object at a person is an assault. And his conduct also resisted, opposed, impeded, and interfered with officers who were trying to establish a police line to hold back the crowd. Next, the video makes clear that his conduct was forcible and intentional. Mr. Samsel threw the plank—hard—directly toward the line of police officers. He certainly did that on purpose. And the MPD officers on the scene of the Capitol count as designated officers under this statute because they were assisting USCP. *See* 18 U.S.C. § 1114(a); see also Section I(C). They were engaged in performing official police duties in trying to hold back the crowd of rioters.

That leaves the questions whether the Court finds that the wooden 2x4 Mr. Samsel threw at the police officers is a dangerous or deadly weapon and Mr. Samsel intended to use it as such. The answers to those questions are yes and yes. A 2x4, wooden plank, especially when hurled at someone's face and traveling as fast as it appears in the video here, can cause serious injury to a person. Intentionally throwing a wooden plank at a person is using it in that manner. The Court therefore finds that § 111(b)'s enhancement applies.

ECF 345 at 40-42, 46-47.

## II. Legal Standards

### A. Federal Rule of Criminal Procedure 29

Federal Rule of Criminal Procedure 29 permits the defendant to move for judgment of acquittal at the close of the government's case in chief or at the close of all evidence on the ground that the evidence presented is "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Court must consider the evidence "in the light most favorable to the government" to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *United States v. Shi*, 991 F.3d 198, 205 (D.C. Cir. 2021) (citations omitted). Stated otherwise, "a judgment of acquittal is warranted 'only when there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt.'" *United States v. Khanu*, 675 F. Supp. 2d 55, 60 (D.D.C. 2009) (quoting *United States v. Byfield*, 928 F.2d 1163, 1165 (D.C. Cir. 1991)).

When considering a Rule 29 motion after a verdict, the Court "must view the evidence in the light most favorable to the verdict, and must presume that the [trier of fact] has properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983). Credibility determinations are for the factfinder. *See United States v. Williamson*, 81 F. Supp. 3d 85, 89 (D.D.C. 2015); *see also Glasser v. United States*, 315 U.S. 60, 80 (1942) (courts should not "weigh the evidence or determine the credibility of witnesses"). "If the evidence reasonably permits a verdict of acquittal or a verdict of guilt, the decision is for the factfinder to make," and the motion must be denied. *United States v. Jabr*, No. CR 18-0105 (PLF), 2019 WL 13110682, at *4 (D.D.C. May 16, 2019) (granting Rule 29 motion as to completed § 1752(a)(1) offense, denying Rule 29 motion as to attempt to commit § 1752(a)(1), and finding the defendant guilty of same following a bench trial) (citing *United States v. Jemal*, Criminal No. 05-0359, 2007 WL 778623, at *3 (D.D.C. March 12, 2007); *United States v. Sutton*, 801 F.2d 1346, 1358 (D.C. Cir. 1986)).

As a theoretical matter, "the same standard guides a district court in resolving a Rule 29 motion whether in the context of a bench or jury trial." *Id.* at *4. In practice, however, "[i]n a bench trial, the judge acting as the trier of both fact and law implicitly rules on the sufficiency of the evidence by rendering a verdict of guilty." *United States v. Atkinson*, 990 F.2d 501, 503 (9th Cir. 1993) (holding that "no motion for acquittal is necessary in a bench trial in order to preserve for

4

appeal a challenge to the sufficiency of the evidence"). Accordingly, a majority of circuits, including the D.C. Circuit, have held that "the failure to move for a judgment of acquittal does not foreclose an attack on the sufficiency of the evidence on appeal." *United States v. Whitlock*, 663 F.2d 1094, 1097 n.24 (D.C. Cir. 1980) (opinion of Robinson, J.) (collecting cases). This is so, because where the factfinder and the court are one and the same, a trial court's guilty verdict requires the court to have already concluded that there is *more than* sufficient evidence. "Rule 29 protects a defendant against an improper or irrational verdict of the jury." *United States v. Grace*, 367 F.3d 29, 34 (1st Cir. 2004) (internal quotations omitted). As such, it would be "odd to suggest that trial judges must be given the opportunity with a Rule 29 motion to protect themselves from their own capriciousness." *Id.* Given that both of Defendant's argument on Count Ten hinges on sufficiency of the evidence, the Court should deny his motion under Rule 29.

B. <u>Federal Rule of Criminal Procedure 33</u>

Pursuant to Rule 33, a court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. There are two prongs to a Rule 33 motion for a new trial, either "newly discovered evidence" under (b)(1) or "other grounds" under (b)(2). Defendant appears to be arguing for a new trial under (b)(2). *See* Defense Mot. at p.1, n.1.

Motions for a new trial are "not favored and are viewed with great caution." *United States v. Borda*, 786 F. Supp. 2d 25, 31 (D.D.C. 2011) (internal citations omitted). "Despite the court's broad authority to order a new trial, it should be exercised sparingly and limited to situations presenting a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Id.* at 32 (internal quotations and citations omitted).

The granting or denial of a motion for a new trial is committed to the sound discretion of the trial court judge and is reviewed only for abuse of discretion, *United States v. Kelly,* 790 F.2d

130, 133 (D.C. Cir. 1986). The defendant bears the burden of demonstrating that a new trial is warranted, and the burden is heavier when the motion is made beyond the first seven days, *United States v. Mangieri*, 694 F.2d 1270, 1285 (D.C. Cir. 1982). To prevail, he "must overcome a strong presumption . . . in favor of upholding the jury verdict." *United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990) (internal quotation marks and citation omitted). [1]

### III. The Government Presented --And The Court Found-- More Than Enough Evidence To Support Its Guilty Verdict On Counts Ten And Thirteen.

*Count Ten.* According to the Defendant, "the government adduced no evidence, nor has it proved beyond a reasonable doubt, that Mr. Samsel had the requisite *mens rea* to demonstrate his intent to obstruct or impede the Electoral College vote certification 'knowingly, with awareness that the natural and probable effect of [his] conduct would be to obstruct or impede the official proceeding.'" Def. Mot. at 3-4. In support of his argument, the Defendant points to a text which he sent to a friend on the morning of January 6, 2021: "Fucking demarcates [sic] won Georgia see you soon." Def. Mot. at 4.[2] The Defendant concludes that this text, along with additional texts that the Defendant sent after January 6th, were insufficient to prove his intent to impede or obstruct the certification. Def. Mot. at 4-5.

The Court's very detailed findings on this matter reflect otherwise. In its findings on Count Ten, the Court referenced its prior findings underlying Count Eight where it explained:

> Starting with Mr. Samsel, the Court concludes beyond a reasonable doubt that he came to the Capitol on January 6th to disrupt Congress and, specifically, the certification of the 2020 election. His statements prove that he was acutely aware of what was happening

---

[1] Here, the defendants, including Samsel, chose to proceed with a bench trial, but the strong presumption remains.
[2] For the first time, the Defendant now advances the argument that this text should be read in two separate parts, acknowledging the fact that the Democrats won Georgia, and not linking it to the fact that he plans to meet up with his friend at the Capitol building ("see you soon"). Def. Mot. at 4-5. That interpretation is not supported by a plain reading of the text, or the evidence adduced at trial.

6

>regarding the election. For example, early on the morning of January 6th, he sent a text to a friend to tell him that the "[f]ucking demarcates [sic] won Georgia see you soon." Gov. Ex. 1103A; *see also* ECF 318 at 162:4–17. "See you soon," referred to seeing the friend in Washington, D.C later that day. ECF 318 at 175:2–14. The logical inference the Court draws from the text message is that Mr. Samsel intended to see his friend soon in Washington, D.C. because of the election results. Mr. Samsel came to Washington, D.C. on the day that Congress convened to certify the election, at the location it was supposed to take place, and at the time that the certification was supposed to happen. The Court does not find that is a coincidence. While on Capitol grounds, he waved a "Rambo-style flag" depicting former President Trump's face on Rambo's body. *Id.* at 147:2-149:9 (Agent Curcio identifying Mr. Samsel in Government Exhibit 408). And at Peace Circle, Mr. Samsel was surrounded by people yelling "Stop the steal." Gov. Ex. 308 at 0:09–0:12. The Court does not hold him accountable for what others were saying and doing, but the video evidence makes clear that he was not oblivious to what was happening around him. To the contrary, the video evidence shows him fully immersed in his surroundings. Despite being aware that the crowd had gathered to "Stop the steal," he remained on the Capitol grounds and recorded himself smiling and saying, "We breached the Capitol!" Gov. Ex. 1103B. And then there is his conduct at the Capitol. He was not just present on the grounds, or picketing or demonstrating. He knocked down barricades so that he could get into closed areas of the grounds, assaulted and argued with officers, and otherwise engaged in significantly disruptive conduct. This all leaves the Court with the conclusion that he was trying to disrupt what was going on at the Capitol, which the Court is firmly convinced he understood to be some proceeding related to the certification of the election based on the trial evidence.
>
>And if the Court had any question about Mr. Samsel's intent, his subsequent statements fill in the gaps. After leaving the Capitol, for example, he sent a text message to an acquaintance bragging about being the "first ones to brake [sic] down the door." Gov. Ex. 1103T. He also forwarded a news article bearing a headline that referred to "halting Congress's counting of electoral votes," took responsibility for what occurred, and again claimed to have been the "first one over the fence." *See* Gov. Ex. 1103V; Gov. Ex 1103W. He boasted that "everybody followed" him and that they "went nuts lol." Gov. Ex. 1103W. Although he sent these texts after he left the Capitol, they provide further evidence confirming the reason that he was there. At no point afterward did he express surprise that his conduct disrupted the official process or disclaim intent. To the contrary, he took pride in the fact that he believed he led the charge, which further confirms what his intentions were that day.

ECF 345, p. 35-37.

The Court found that the Defendant meant to obstruct or impede the certification not just by one text to his friend on the morning of January 6th directly implicating the certification, but also through his obstructionist behavior that entire day, followed by his comments in the following

days. This evidence is more than enough to support the Court's finding of the Defendant's intent to obstruct or impede the certification on January 6, 2021.

*Count Thirteen*. The Defendant does not appear to be contesting the sufficiency of the evidence of this assault; he instead appears to be arguing that (1) the Court should have suppressed the body-worn camera video, upon which it relied to reach its verdict on Count Thirteen, because it was not timely produced (Def. Mot. at 6-7); and (2) the Court should have suppressed the body worn camera, because the government did not provide forensic extractions of "all records related to the seizure and/or search of any mobile device believed to be used by Mr. Samsel … and any other individual believed to have been at the Peace Monument at or about 12:45 on January 6, 2021." (Def. Mot. at 7.) As to (1), Defendant filed a *motion in limine* to preclude the body-worn camera (BWC) video underlying Count Thirteen, because of late disclosure on October 2, 2023 (ECF 282); the Government filed its response on October 10, 2023 (ECF 287); and the Court denied the motion by minute order on October 24, 2023. Because this matter was addressed by the Court and Defendant's motion was denied in pre-trial litigation, it should not serve as a basis for a new trial or judgment notwithstanding the verdict. As to (2), the assault at issue in Count Thirteen did not occur at the Peace Monument, nor did it occur at 12:45. Further, the government did not rely on evidence from Defendants' mobile devices to prove this assault. Similarly, the exhibits which the Court cited in its Findings of Fact were not pulled from Defendants' mobile devices. Finally, similar to the first issue, Defendant's access to his and others' devices was litigated and resolved at trial. None of these arguments are a basis for upending a guilty verdict.

//

//

//

## IV. Conclusion

Because the evidence presented at trial was undoubtedly sufficient to sustain a conviction, and the interest of justice weigh in favor of maintaining the Defendant's convictions on all counts, this Court should deny the Defendant's motion.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY

By: */s/ Alexandra F. Foster*
ALEXANDRA F. FOSTER
Assistant United States Attorney
D.C. Bar 470096
Detailee to the
Washington D.C. U.S. Attorney's Office
601 D Street N.W.
Washington, D.C. 20530
(619) 546-6735
Alexandra.Foster@usdoj.gov